**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

MICHAEL T. MCLAUGHLIN,

*Petitioner-Appellant*,

v.

RONALD OLIVER; ATTORNEY GENERAL FOR THE STATE OF NEVADA,

*Respondents-Appellees*.

No. 21-15806

D.C. No. 2:11-cv-00884-JCM-VCF

OPINION

Appeal from the United States District Court
for the District of Nevada
James C. Mahan, District Judge, Presiding

Argued and Submitted May 17, 2023
Phoenix, Arizona

Filed March 19, 2024

Before: Jacqueline H. Nguyen and Daniel P. Collins, Circuit Judges, and Edward R. Korman,* District Judge.

Opinion by Judge Collins

---

* The Honorable Edward R. Korman, United States District Judge for the Eastern District of New York, sitting by designation.

## SUMMARY[**]

### Habeas Corpus

The panel affirmed the district court's denial of Michael McLaughlin's habeas corpus petition challenging his state court convictions for attempted murder, battery, and burglary arising from his stabbing attack on multiple employees at the Clark County Social Services office in Henderson, Nevada.

McLaughlin contended that his trial counsel was ineffective in failing to pursue a defense of voluntary intoxication with respect to the charges that required the State to prove specific intent.

The district court denied the petition, but this court vacated and remanded in an unpublished decision. In that decision, this court held that McLaughlin's first state post-conviction counsel had rendered ineffective assistance in "fail[ing] to conduct *any* independent investigation of the claim" and that this consideration sufficed to establish cause and prejudice under *Martinez v. Ryan*, 566 U.S. 1 (2012), to excuse the procedural default of failing to properly present the new evidence to the state courts. This court therefore concluded that the claim was subject to de novo review in federal court, and remanded for the district court to consider whether to hold an evidentiary hearing. Although 28 U.S.C. § 2254(e)(2) generally bars consideration of new evidence that was not considered by the state courts, this court held that the bar of § 2254(e)(2) did not apply. This court held

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

that McLaughlin had attempted to present the evidence to the state courts in his second post-conviction proceeding, and also that, under Ninth Circuit precedent, he should not be charged with the deficiencies of his first post-conviction counsel. In accordance with this court's instructions, the district court on remand held an evidentiary hearing and received substantial evidence that had not been considered by the Nevada state courts when those courts rejected McLaughlin's ineffective assistance claim on the merits. The district court again denied relief, and McLaughlin appealed.

In this appeal, the panel held that the Supreme Court's recent decision in *Shinn v. Martinez Ramirez*, 596 U.S. 366 (2022), has overruled the then-existing Ninth Circuit authority under which this court previously authorized the district court to conduct an evidentiary hearing and to consider McLaughlin's new evidence.

McLaughlin argued that he did not "fail[] to develop the factual basis" of his ineffective assistance claim "in State court proceedings" within the meaning of § 2254(e)(2), because he "attempt[ed]" to develop that claim by filing a successive state post-conviction petition that was rejected as procedurally barred.

The panel held that McLaughlin's failure to present that evidence to the state courts "in compliance with state procedural rules" counts as a "fail[ure] to develop the factual basis of a claim in State court proceedings" under § 2254(e)(2), as construed in *Shinn*.

The panel held that, under *Shinn,* the fact that McLaughlin's first post-conviction counsel's negligence led to that failure makes no difference. The panel explained that *Shinn*'s holding that post-conviction counsel's errors are

imputed to the petitioner for purposes of § 2254(e)(2) is directly contrary to this court's prior conclusion, in McLaughlin's first appeal, that such imputation "makes no sense in the context of a claim rescued from procedural default by *Martinez*." When (as here) § 2254(e)(2) applies and the petitioner cannot meet its requirements, a federal court may not consider new evidence to assess cause and prejudice under *Martinez* to excuse the procedural default in state court.

Because the negligence of McLaughlin's first post-conviction counsel in failing to develop the state court is attributable to McLaughlin, there was a "fail[ure]" within the meaning of § 2254(e)(2) and the restrictions of that section therefore apply. Because McLaughlin conceded that he cannot meet the strict requirements of § 2254(e)(2), that section bars consideration of McLaughlin's new evidence.

Accordingly, the panel could not consider McLaughlin's new evidence or the augmented version of his trial-ineffective-assistance claim based on that evidence. It could only consider, through the deferential lens of the Antiterrorism and Effective Death Penalty Act of 1996, whether the state court properly rejected McLaughlin's original trial-ineffective-assistance claim. Here, however, McLaughlin conceded at oral argument that his habeas claim fails on the merits under AEDPA if § 2254(e)(2) bars consideration of his new evidence. Accordingly, McLaughlin's habeas petition necessarily fails.

## COUNSEL

Megan Hopper-Rebegea (argued) and Jonathan M. Kirschbaum, Assistant Federal Public Defenders; Rene L. Valladares, Federal Public Defender; Office of the Federal Public Defender, Las Vegas, Nevada; for Petitioner-Appellant.

Adam L. Woodrum (argued), Deputy State Attorney General, Office of the Attorney General, Carson City, Nevada; Allison Herr, Senior Deputy Attorney General; Aaron D. Ford, Attorney General; Office of the Attorney General, Las Vegas, Nevada; for Respondents-Appellees.

## OPINION

COLLINS, Circuit Judge:

In this federal habeas corpus proceeding, Petitioner Michael McLaughlin challenges his state court convictions for attempted murder, battery, and burglary arising from his stabbing attack on multiple employees at the Clark County Social Services ("CCSS") office in Henderson, Nevada in December 2002. McLaughlin contends that his trial counsel was ineffective in failing to pursue a defense of voluntary intoxication with respect to those charges (such as attempted murder) that required the State to prove specific intent. The district court denied the petition, but we vacated and remanded in an unpublished decision. In accordance with our instructions, the district court on remand held an evidentiary hearing and received substantial evidence that had not been considered by the Nevada state courts when those courts rejected McLaughlin's ineffective assistance

claim on the merits. The district court nonetheless again denied relief, and McLaughlin has again appealed. We conclude that, under the Supreme Court's recent decision in *Shinn v. Martinez Ramirez*, 596 U.S. 366 (2022), the federal courts are barred under 28 U.S.C. § 2254(e)(2) from considering any of the new evidence offered by McLaughlin in support of his federal petition. Because McLaughlin concedes that he cannot succeed on his ineffective assistance claim unless we consider his new evidence, we affirm the district court's denial of McLaughlin's habeas petition.

## I

## A

On December 4, 2002, McLaughlin went to the CCSS office in Henderson, Nevada to apply for medical and rental assistance. The social worker who assisted him, Shelleen Abrams, concluded that he was eligible for medical assistance, and she "issued him a two-month medical card for his medical problem." But Abrams concluded that, because McLaughlin was then living with his brother, he did not qualify for rental assistance. After McLaughlin departed, Abrams noticed a set of keys on the floor and left them with the front desk in case McLaughlin or someone else called for them. McLaughlin later left Abrams a phone message inquiring about the keys, and Abrams called back and relayed the message that the keys were available to be picked up at the front desk.

McLaughlin returned to the office to retrieve his keys at around 11:15 AM on December 10. When he arrived, however, McLaughlin told the office manager at the front desk, Kathryn Atkinson, that he wanted to inquire again about rental assistance because he said he was now "on the street." Atkinson walked over to where Abrams was in an

adjacent room and told her about McLaughlin's renewed request for rental assistance. Abrams said to McLaughlin, who was then standing by the doorway, "Mike, you're not eligible for rent." Abrams then told Atkinson to ask McLaughlin to sit down and wait while Abrams finished up with another client and that Abrams would try to see him before lunch.

When an employee announced that the office would close for lunch at noon, McLaughlin got up to leave, but Atkinson told him that he could stay because Abrams wanted to try to see him before lunch. Atkinson later became concerned that McLaughlin seemed agitated and was muttering to himself, and so she locked the door to the separate area where the social workers were. McLaughlin later went to use the restroom, and Atkinson went out the front entrance towards the street to check on another client. When she went to go back inside, McLaughlin confronted her at the doorway, holding a knife with a blade at least four inches in length. McLaughlin then attacked Atkinson, knocking her to the ground. He then proceeded to hit and kick her, and he stabbed her in the side and abdomen. Believing that McLaughlin was trying to stab her in the throat, Atkinson defensively tried to keep the knife away from her neck and ended up receiving more than a dozen cuts to her hands.

Meanwhile, the office's security guard, Steven Glenn, heard Atkinson's screams and came to her assistance. After Glenn punched McLaughlin in the chin, McLaughlin stabbed Glenn near the heart, and Glenn fell backwards. Both men went back inside, and at one point in the ensuing struggle, McLaughlin fell to the floor and the knife came out of his hand. McLaughlin, however, managed to retrieve the knife. McLaughlin also chased the supervising social

worker, Susan Rhodes, stabbed her twice, and hit her in the head with a chair. Glenn and others were trying to subdue McLaughlin, hitting him with chairs, but McLaughlin laughed and said, "You'll never stop me." At another point during the attacks, McLaughlin said words to the effect of, "[Y]ou people think you can get by with anything. I'm going to show you that you can't." Among the others assaulted by McLaughlin were Edward Johanns, a volunteer at a Catholic social service agency down the corridor who had come to try to help stop the attack, as well as a priest from that same agency.

When the police arrived soon thereafter in response to a 911 call, McLaughlin immediately obeyed their order to get on the ground, and he did not resist being arrested.

**B**

McLaughlin was charged in Nevada state court with three counts of attempted murder in connection with the attacks on Atkinson, Glenn, and Rhodes; one count of battery with a deadly weapon for the attack on Johanns; and one count of burglary while armed with a deadly weapon. At trial, McLaughlin's defense attorney, Lynn Avants, argued that McLaughlin had not planned the crimes; that he lacked the specific intent required for attempted murder; and that, at most, he was guilty of multiple batteries, which are general intent crimes. The jury, however, convicted McLaughlin on all counts. Taking account of certain enhancements resulting from his six prior felony convictions, the trial court sentenced McLaughlin to prison

for a maximum of 130 years.[1]  McLaughlin's conviction was affirmed by the Nevada Supreme Court in February 2006.

McLaughlin also sought state post-conviction relief.  In his operative *pro se* petition, McLaughlin generally alleged that his trial counsel had "fail[ed] to conduct an adequate pre-trial investigation," but he did not specifically mention voluntary intoxication or any related issue.  The State opposed the petition, noting, as to the allegation of inadequate pretrial investigation, that it was bereft of supporting allegations.  In November 2007, the trial court held a hearing on the petition at which Avants, McLaughlin's former counsel, testified.  The trial court subsequently denied the petition, holding that McLaughlin had failed to allege any specific respect in which Avants' investigation was inadequate and had failed to show that the outcome would have been any different had he investigated more thoroughly.  In April 2009, however, the Nevada Supreme Court reversed, concluding that the trial court should have appointed counsel for McLaughlin before rendering a decision on the petition.

Appointed counsel filed a supplemental brief in support of McLaughlin's state petition in June 2010.  The supplemental brief argued, *inter alia*, that trial counsel had been ineffective in failing to present a defense of voluntary intoxication to the charges that required proof of specific intent.  The brief noted that, in the presentence report, McLaughlin had stated that "he was high on methamphetamine" at the time of the offense, and the

---

[1] The trial court initially fixed McLaughlin's minimum sentence at 52 years, but as a result of a 2018 ruling in a subsequent state post-conviction proceeding that is not at issue here, McLaughlin is now eligible for parole in 2035.

medical records from McLaughlin's treatment after the attack stated that McLaughlin had said that he had "used marijuana" earlier that day. Such intoxication, the brief argued, could have provided a permissible basis under Nevada law for the jury to find a lack of specific intent. *See* NEV. REV. STAT. § 193.220 (2002) ("No act committed by a person while in a state of . . . voluntary intoxication shall be deemed less criminal by reason of his condition, but whenever the actual existence of any particular purpose, motive or intent is a necessary element to constitute a particular species or degree of crime, the fact of his . . . intoxication may be taken into consideration in determining the purpose, motive or intent.").

The trial court held a second hearing on McLaughlin's petition, at which Avants again testified. Avants acknowledged that, at the time of his representation of McLaughlin in the CCSS matter, he probably had received certain medical records that were shown to him during the hearing. Those records indicated that McLaughlin had received treatment for "methamphetamine overdose and psychosis" in 1996 and that, while in the hospital, he "had torn a catheter out of himself," causing significant injury. The records also stated that McLaughlin had been hospitalized in 1995 because he had been "acting crazy" towards his mother, who said that he was being "paranoid" and claimed he was "being attacked by Martians." The medical records also showed that, on the day of the attacks in 2002, McLaughlin had reported using marijuana earlier that day. Avants also stated that, because he had represented McLaughlin even before the CCSS matter, he knew at that time that McLaughlin had convictions for drug possession and Avants "was aware of his abuse of methamphetamines."

Avants nonetheless gave three reasons why he did not pursue the theory that McLaughlin lacked specific intent because he was high on drugs. First, he said that "there was never any indication from the conversations [he] had with Mr. McLaughlin that he was suffering from some sort of narcotic, amphetamine-induced psychosis" at the time of the attacks. Avants testified that, if McLaughlin had told him that he "didn't know what [he] was doing at the social welfare center that day because [he] was so high or so medicated," Avants would have pursued that further. Second, Avants also acknowledged, during questioning by the State, that no blood work had been done for McLaughlin on the day of the incident, and so there was no medical staff or expert that Avants could have called to establish that McLaughlin had methamphetamine in his system on the day of the attack. Third, Avants said that, even if such a defense had been available on the facts, he believed that many jurors are "extremely resistant to any argument that because somebody is high on narcotics, that their ability to form intent is somewhat impaired." That "risk" was "something that you have to factor in whenever you're going to present that specific defense."

McLaughlin also testified at the hearing, and he stated that in discussing the charged incident, he had told Avants that he "did meth the night before into the early morning." McLaughlin said that he had last used methamphetamines at around 3:00 or 3:30 AM, which (according to the trial testimony) would have been about eight hours before he arrived at the CCSS. McLaughlin also confirmed that the medical records shown to Avants at the hearing were part of the case file that McLaughlin had received from counsel after the case was concluded. McLaughlin stated that, although the records did not include a toxicology report, he

was certain that a blood draw had been done at the hospital on the day of the CCSS incident. He claimed that he voluntarily mentioned his marijuana use to hospital staff because he assumed it would be discovered when they tested his blood, but that he nonetheless did not tell them about having used methamphetamines because that was not "really socially acceptable like marijuana is."

The trial court denied McLaughlin's petition in a written order on January 11, 2011. The court noted that there was no "physical evidence" that supported McLaughlin's claim he was intoxicated at the time of the incident and that counsel had testified as to the "risks inherent in portraying a criminal defendant to a jury as a drug addict." Accordingly, the court found "trial counsel's failure to raise the defense of voluntary intoxication to be a strategic decision, made intentionally and effectively." In the alternative, the trial court held that "there is no reasonable likelihood the defense would have changed the outcome at trial."

Just over a year later, the Nevada Supreme Court affirmed the denial of post-conviction relief. The court held that the trial court's factual findings were not clearly erroneous and were supported by substantial evidence, and that McLaughlin had not shown any legal error.

## C

While his post-conviction appeal was pending in the Nevada Supreme Court, McLaughlin filed a *pro se* federal petition for a writ of habeas corpus in the district court, and he filed an amended petition after his state appeal was rejected. The district court thereafter appointed counsel, who subsequently filed a further amended petition on January 31, 2013. In addition to recounting the facts developed at the state court post-conviction hearings, the

federal petition relied on several declarations containing additional information assembled by counsel's investigator.

First, habeas counsel submitted a December 24, 2012 declaration from McLaughlin's mother, Marva Bennett, who stated that McLaughlin had stopped by her house on the morning of the CCSS incident. Bennett pretended that she was not home and, observing McLaughlin "through the peephole" in the door, she could see that he appeared "extremely agitated and high." She said that, "[a]s he was leaving," McLaughlin "pushed over some of [her] lawn chairs and threw rocks."

Second, the counseled amended federal petition attached a January 24, 2013 declaration from McLaughlin's half-brother, Alan White. White stated that McLaughlin had a "serious methamphetamine addiction at the time of his arrest" and that McLaughlin had smoked methamphetamine at White's house around 7:00 or 8:00 PM the night before the CCSS incident. According to White, at "[a]round 1:30 or 2:00 a.m.," he confronted McLaughlin, who was "high," and told him that he would need to leave. White said that, when he woke up at around 6:00 AM, McLaughlin was gone.

Third, habeas counsel subsequently submitted a declaration from the investigator recounting her recollection of a February 6, 2013 interview with Jason Johnson. The investigator said that Johnson claimed that McLaughlin arrived at his house sometime between 11:00 PM the day before, and 2:00 AM the day of, the CCSS attack. Johnson also reportedly stated that he and McLaughlin "stayed up all night, without sleep, working on a piece of electronic equipment" and that, at some point, "McLaughlin smoke[d] half a gram of methamphetamine." Johnson assertedly said that McLaughlin left around 10:30 AM, "stating that he 'had

to go do something,'" and that Johnson "was shocked by McLaughlin's arrest" later that day.

Fourth, habeas counsel submitted with the amended petition an additional declaration in which the investigator summarized certain points from her January 18, 2013 interview with Steven Glenn, the CCSS security guard whom McLaughlin had attacked during the charged incident. According to the investigator, Glenn thought that it was "obvious" that McLaughlin was "high" during the attack; that this explained the "superhuman strength" that McLaughlin showed during the incident; and that at times during the incident McLaughlin had a "vacant, nobody's home look."

Shortly after submitting McLaughlin's federal petition, federal habeas counsel returned to state court and filed a successive post-conviction petition. Based on the same new evidence submitted in support of the federal petition, the state petition re-asserted McLaughlin's claim that trial counsel had been ineffective in failing to investigate and pursue a voluntary intoxication defense. The state trial court denied the petition as procedurally barred, and the Nevada Supreme Court affirmed. The state high court held that, because McLaughlin's petition was both untimely and successive, it "was procedurally barred absent a demonstration of good cause." *See* NEV. REV. STAT. §§ 34.726, 34.810. The trial court concluded that McLaughlin was "aware of his state of mind" at the time and had previously known about each of the four proffered witnesses, who "could have been interviewed during the course of previous proceedings." Consequently, the trial court held, McLaughlin had failed to show good cause for not presenting this additional evidence in connection with his prior post-conviction petition. On appeal, McLaughlin

argued that his post-conviction counsel for his prior state petition had been ineffective in failing to develop this evidence, but the Nevada Supreme Court rejected this contention.  The court held that, under its decision in *Brown v. McDaniel*, 331 P.3d 867 (Nev. 2014), "[i]neffective assistance of post-conviction counsel" cannot establish good cause where, as in this case, "the appointment of counsel in the prior post-conviction proceedings was not statutorily or constitutionally required."  Accordingly, the Nevada Supreme Court held that the trial court "did not err in dismissing McLaughlin's petition as procedurally barred."

The federal district court denied McLaughlin's habeas petition in March 2015.  Noting that the Nevada Supreme Court had held that McLaughlin's augmented ineffective assistance claim had been rejected as procedurally defaulted, the court turned to whether *federal* law would excuse that default.  The court noted that, under *Martinez v. Ryan*, 566 U.S. 1 (2012), ineffective assistance of state post-conviction counsel—even though such counsel is not constitutionally guaranteed—may in some circumstances provide cause for excusing, in federal court, a state-law procedural default of an underlying claim that trial counsel was ineffective.  Nonetheless, the district court held that, even considering the new evidence, the underlying claim of ineffective assistance of trial counsel was "without merit."  The district court granted a certificate of appealability as to this claim.

McLaughlin appealed, and we vacated and remanded. *McLaughlin v. Laxalt*, 665 F. App'x 590 (9th Cir. 2016).  We held that McLaughlin's first state post-conviction counsel had rendered ineffective assistance in "fail[ing] to conduct *any* independent investigation of the claim" and that this consideration sufficed to establish cause and prejudice under *Martinez* to excuse the procedural default of failing to

properly present the new evidence to the state courts. *Id*. at
592–93. We therefore concluded that the claim was subject
to de novo review in federal court, and we remanded for the
district court to consider whether to hold an evidentiary
hearing. *Id*. at 593. Although 28 U.S.C. § 2254(e)(2)
generally bars consideration of new evidence that was not
considered by the state courts, we held that the bar of
§ 2254(e)(2) did not apply. *Id*. We held that McLaughlin
had attempted to present the evidence to the state courts in
his second post-conviction proceeding, and also that, under
Ninth Circuit precedent, he should not be charged with the
deficiencies of his first post-conviction counsel:

> [A]lthough a state habeas lawyer's errors
> normally are imputed to a habeas petitioner
> for purposes of determining whether the
> petitioner has been diligent under
> § 2254(e)(2), *Williams v. Taylor*, 529 U.S.
> 420, 432 (2000), such imputation makes no
> sense in the context of a claim rescued from
> procedural default by *Martinez*. *See Detrich
> v. Ryan*, 740 F.3d 1237, 1247 (9th Cir. 2013)
> (en banc) (opinion of Fletcher, J.) ("Indeed,
> even with respect to the underlying trial-
> counsel IAC [ineffective assistance of
> counsel] 'claim,' given that the reason for the
> hearing is the alleged ineffectiveness of both
> trial and PCR [post-conviction review]
> counsel, it makes little sense to apply
> § 2254(e)(2).").

665 F. App'x at 593.

On remand, the district court conducted an evidentiary hearing at which Avants again testified.  The court also received live or deposition testimony from Bennett, White, and Johnson, as well as from a pharmacological expert and from three of the officers who had been involved with the arrest of McLaughlin in December 2002.  The district court held that, even considering all of the new evidence, Avants had not rendered ineffective assistance and that McLaughlin had not shown prejudice.  The district court therefore denied the petition and declined to issue a certificate of appealability.  We subsequently granted a certificate of appealability as to the issue of "whether [McLaughlin's] trial counsel rendered ineffective assistance by failing to investigate and present a defense of voluntary intoxication."  McLaughlin has timely appealed, and we have jurisdiction under 28 U.S.C. § 1291 and § 2253(a).

## II

The State contends, as a threshold matter, that the Supreme Court's recent decision in *Shinn v. Martinez Ramirez*, 596 U.S. 366 (2022), has overruled the then-existing Ninth Circuit authority under which we previously authorized the district court to conduct an evidentiary hearing in this case and to consider McLaughlin's new evidence.  We agree.

## A

"To ensure that federal habeas corpus retains its narrow role," which is to "guard[] only against 'extreme malfunctions in the state criminal justice systems,'" the Antiterrorism and Effective Death Penalty Act ("AEDPA") "imposes several limits on habeas relief, and [the Supreme Court] ha[s] prescribed several more."  *Shinn*, 596 U.S. at 377 (simplified).  Chief among these are the "strict rules

requiring prisoners to raise all of their federal claims in state court before seeking federal relief." *Id*. "Ordinarily, a state prisoner satisfies this exhaustion requirement by raising his federal claim before the state courts in accordance with state procedures." *Id*. at 378. However, if the prisoner fails to comply with state procedures, and the state courts "dismiss these claims for their procedural failures, such claims are technically exhausted" in the sense that no remedies remain available in state court. *Id*. But that does not mean that prisoners can simply "ignore state procedure on the way to federal court," because that "would defeat the evident goal of the exhaustion rule." *Id*. To address that concern, the Supreme Court has developed, as "an important corollary to the exhaustion requirement," the "doctrine of procedural default." *Id*. (citation and internal quotation marks omitted). "Under that doctrine, federal courts generally decline to hear any federal claim that was not presented to the state courts consistent with the State's own procedural rules." *Id*. (simplified).

However, there are certain limited exceptions to these rules, and a federal court is therefore "not required to automatically deny unexhausted or procedurally defaulted claims." *Id*. at 379. In particular, a federal court "may excuse [a] procedural default," but "only if a prisoner 'can demonstrate *cause* for the default and actual *prejudice* as a result of the alleged violation of federal law.'" *Id*. (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991) (emphasis added)).

In *Shinn*, the Supreme Court addressed the circumstances in which a "federal habeas court" presented with a procedurally defaulted *ineffective-assistance-of-trial-counsel* claim may proceed to "hear [such] a claim or consider evidence that a prisoner did not previously present

to the state courts in compliance with state procedural rules." 596 U.S. at 375–76. Such claims present unique concerns, because some States expressly "require[] prisoners to raise such claims for the first time during state collateral proceedings," where "there is no constitutional right to counsel."[2] *Id.* at 380, 386. Similarly, other States implicitly require the use of collateral proceedings by "effectively foreclos[ing] direct review of trial-ineffective-assistance claims." *Id.* at 380. Given these unique features, the Supreme Court held in *Martinez v. Ryan*, 566 U.S. 1 (2012), that "ineffective assistance of state *postconviction* counsel may constitute 'cause' to forgive procedural default of a trial-ineffective-assistance claim" in States that explicitly or effectively require the use of collateral proceedings to raise such claims. *Shinn*, 596 U.S. at 380 (emphasis added). In reaching this conclusion, *Martinez* created a limited exception to the general "rule that attorney error cannot establish cause to excuse a procedural default unless it violates the Constitution." *Id.*

In *Shinn*, the Supreme Court addressed whether *Martinez*'s special rule for applying *Coleman*'s cause-and-prejudice test in the context of trial-ineffective-assistance claims would also apply to "excus[e] a prisoner's failure to develop the state-court record" concerning such claims. *Id.* at 381. Prior to AEDPA, the Court had applied, in deciding whether to excuse such record-development failures, the same *Coleman* cause-and-prejudice standard that is used to excuse procedural defaults generally. *See Keeney v. Tamayo-Reyes*, 504 U.S. 1, 10–11 (1992). But Congress in AEDPA "replaced *Keeney*'s cause-and-prejudice standard

---

[2] The State expressly conceded in its answering brief in this court that Nevada is such a State.

for evidentiary development with the even more stringent requirements now codified at 28 U.S.C. § 2254(e)(2)." *Shinn*, 596 U.S. at 381 (citation and quotation marks omitted).   The Court described those requirements as follows:

> Section 2254(e)(2) provides that, if a prisoner "has failed to develop the factual basis of a claim in State court proceedings," a federal court may hold "an evidentiary hearing on the claim" in only two limited scenarios.  Either the claim must rely on (1) a "new" and "previously unavailable" "rule of constitutional law" made retroactively applicable by th[e] [Supreme] Court, or (2) "a factual predicate that could not have been previously discovered through the exercise of due diligence." §§ 2254(e)(2)(A)(i), (ii).  If a prisoner can satisfy either of these exceptions, he also must show that further factfinding would demonstrate, "by clear and convincing evidence," that "no reasonable factfinder" would have convicted him of the crime charged. § 2254(e)(2)(B). Finally, even if all of these requirements are satisfied, a federal habeas court still is not *required* to hold a hearing or take any evidence.  Like the decision to grant habeas relief itself, the decision to permit new evidence must be

> informed by principles of comity and finality
> that govern every federal habeas case.

596 U.S. at 381–82.**³**

*Shinn* held that, because Congress had displaced *Keeney*'s judge-made cause-and-prejudice standard with a stricter statutory standard, the Court could not, as it had in *Martinez*, invoke its "equitable judgment and discretion" to create exceptions excusing a prisoner's "fail[ure] to develop the factual basis of a claim in State court." *Id*. at 384–85 (citations and internal quotation marks omitted). Because "§ 2254(e)(2) is a statute that [the courts] have no authority to amend," its strictures must be enforced according to their terms, with no *Martinez*-style judge-made equitable exceptions for "only a subset of claims." *Id*. at 385–87.

---

³ The full text of § 2254(e)(2) is as follows:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
>     (A) the claim relies on—
>         (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>         (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>     (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

The *Shinn* Court also considered two specific issues concerning the proper construction of § 2254(e)(2). First, the Court addressed what counts as a "fail[ure] to develop the factual basis of a claim in State court," so as to trigger the application of § 2254(e)(2)'s restrictions. The Court held that a petitioner "fails" to develop the state court record within the meaning of § 2254(e)(2) when he *or his state post-conviction counsel* is "at fault for the undeveloped record in state court." 596 U.S. at 382 (citation and internal quotation marks omitted). As the Court explained,

> [A] prisoner bears the risk in federal habeas for all attorney errors made in the course of the representation, unless counsel provides constitutionally ineffective assistance. And, because there is no constitutional right to counsel in state postconviction proceedings, a prisoner ordinarily must bear responsibility for all attorney errors during those proceedings. Among those errors, *a state prisoner is responsible for counsel's negligent failure to develop the state postconviction record*.

596 U.S. at 382–83 (emphasis added) (simplified).

Second, the Court clarified the sweep of § 2254(e)(2)'s restrictions once they are triggered. Although § 2254(e)(2)'s language refers only to prohibiting "an evidentiary hearing on [a] claim," the Court in *Shinn* reaffirmed that the statute's restrictions also apply "when a prisoner seeks relief based on new evidence *without* an evidentiary hearing." *Shinn*, 596 U.S. at 389 (quoting *Holland v. Jackson*, 542 U.S. 649, 653 (2004) (restoring emphasis deleted by *Shinn*)). A narrower

reading of § 2254(e)(2), the Court stated, "would have countenanced an end-run around the statute." *Id*. Thus, even where a federal habeas court "admits or reviews new evidence" for some *other* purpose—such as determining whether the *Martinez* exception applies to a trial-ineffective-assistance claim that was procedurally defaulted in state post-conviction proceedings—the court "may not consider that evidence on the *merits* of a negligent prisoner's defaulted claim unless the exceptions in § 2254(e)(2) are satisfied." *Id*. (emphasis added).

**B**

Against this backdrop, we conclude that § 2254(e)(2), as construed in *Shinn*, prohibited the district court from considering any of McLaughlin's new evidence in connection with the merits of his trial-ineffective-assistance claim.

Relying on our prior decision in this case, McLaughlin argues that he did not "fail[] to develop the factual basis" of his ineffective assistance claim "in State court proceedings" within the meaning of § 2254(e)(2), because he "*attempt[ed]*" to develop that claim by filing a successive state post-conviction petition that was rejected as procedurally barred. *McLaughlin v. Laxalt*, 665 F. App'x at 593 (emphasis added). But as *Shinn* made clear, the restrictions discussed by the Court in that case—including § 2254(e)(2)—limit when "a federal habeas court" may "hear a claim or *consider evidence that a prisoner did not previously present to the state courts in compliance with state procedural rules*." *Shinn*, 596 U.S. at 375–76 (emphasis added). Under *Shinn*, therefore, a failure to present evidence to the state courts "in compliance with state procedural rules," *id*., counts as a "fail[ure] to develop the

factual basis of a claim in State court," 28 U.S.C. § 2254(e)(2). *See also Shinn*, 596 U.S. at 378 (noting that it is improper "to allow a state prisoner simply to ignore state procedure on the way to federal court").[4]  Here, the Nevada Supreme Court squarely held that McLaughlin's successive petition, with its new evidence, "was procedurally barred," and the court therefore declined to consider any of that evidence.  McLaughlin's failure to present that evidence to the state courts "in compliance with state procedural rules" counts as a "fail[ure] to develop the factual basis of a claim in State court proceedings" under § 2254(e)(2), as construed in *Shinn*.  596 U.S. at 375–76 (citation omitted).

Moreover, under *Shinn*—and contrary to our prior decision in this case—the fact that McLaughlin's first post-conviction counsel's negligence led to that failure makes no difference.  As the Supreme Court held, there has been a "fail[ure]" within the meaning of § 2254(e)(2) if "the prisoner [is] 'at fault' for the undeveloped record in state court," and, "under § 2254(e)(2), a prisoner is 'at fault' even when state postconviction counsel is negligent." *Shinn*, 596

---

[4] Given the intervening and binding decision in *Shinn*, we reject McLaughlin's contention that we are bound to adhere to our prior unpublished decision under the law-of-the-case doctrine.  That doctrine, which "provides that 'one panel of an appellate court will not as a general rule reconsider questions which another panel has decided on a prior appeal in the same case,'" is "not an inexorable command." *United States v. Van Alstyne*, 584 F.3d 803, 813 (9th Cir. 2009) (citations omitted).  In particular, a panel "may depart from the law of the case" when, as here, "an intervening change in the law has occurred." *Id.* (citation omitted); *see also Dean v. Trans World Airlines, Inc.*, 924 F.2d 805, 810 (9th Cir. 1991) (holding that the "doctrine of law of the case does not bar reconsideration" of the panel decision on a prior appeal where the "Supreme Court's decision" in a recent case "is intervening authority which we are obligated to follow").

U.S. at 382, 384; *see also id*. at 382 ("[U]nder AEDPA and [the Supreme Court's] precedents, state postconviction counsel's ineffective assistance in developing the state-court record is attributed to the prisoner" for purposes of § 2254(e)(2).).   *Shinn* acknowledged that *Martinez* had recognized an equitable exception that would allow, in certain circumstances, a habeas petitioner to establish *cause* for a procedural default when post-conviction counsel was ineffective in asserting a trial-ineffective-assistance claim. *Id*. at 380.   But the Court held that no such comparable equitable exception could be engrafted onto § 2254(e)(2)'s strict limitations on the consideration of new evidence.   *Id*. at 384–85 (holding that any such "expansion of *Martinez*" was inconsistent with § 2254(e)(2), which the courts "have no authority to amend").

*Shinn*'s holding on this score—*i.e.*, that post-conviction counsel's errors are imputed to the petitioner for purposes of § 2254(e)(2)—is thus directly contrary to our prior conclusion, in McLaughlin's first appeal, that such imputation "makes no sense in the context of a claim rescued from procedural default by *Martinez*."  665 F. App'x at 593. Indeed, *Shinn* expressly rejected a comparable argument that "there is no point in developing a record" at a hearing to address possible "cause and prejudice" under *Martinez* "if a federal court cannot later consider that evidence on the merits" of the claim due to § 2254(e)(2).  *Id*. at 389.  *Shinn* acknowledged the tension between *Martinez* and § 2254(e)(2), but the Court held that § 2254(e)(2), as construed by the Court, prevails over *Martinez*:

> While we agree that any such *Martinez* hearing would serve no purpose, that is a reason to dispense with *Martinez* hearings

altogether, not to set § 2254(e)(2) aside. Thus, if that provision applies and the prisoner cannot satisfy its "stringent requirements," a federal court may not hold an evidentiary hearing—or otherwise consider new evidence—to assess cause and prejudice under *Martinez*.

596 U.S. at 389 (citation omitted).

Because the negligence of McLaughlin's first post-conviction counsel in failing to develop the record in state court is attributable to McLaughlin, there was a "fail[ure]" within the meaning of § 2254(e)(2) and the restrictions of that section therefore apply. Because, as in *Shinn*, 596 U.S. at 382, McLaughlin concedes that he cannot meet the strict requirements of § 2254(e)(2), that section bars consideration of McLaughlin's new evidence.

Furthermore, as noted earlier, *Shinn* also held that, when (as here) § 2254(e)(2) applies and the petitioner cannot meet its requirements, a "federal court may not . . . consider new evidence[] *to assess cause and prejudice under Martinez*." *Shinn*, 596 U.S. at 389 (emphasis added). Because § 2254(e)(2)'s limitations thus prevail over *Martinez*, *Shinn* abrogates our prior decision holding that McLaughlin's "new evidence" could be considered as so "'fundamentally alter[ing]'" his ineffective assistance claim that the augmented version of the claim should be considered a "new claim" that "fits within the *Martinez* exception to procedural default." *McLaughlin v. Laxalt*, 665 F. App'x at 592 (quoting *Dickens v. Ryan*, 740 F.3d 1302, 1318 (9th Cir. 2014) (en banc)). Because, under *Shinn*, McLaughlin's new evidence cannot be considered either on the merits or "to assess cause and prejudice under *Martinez*," 596 U.S. at 389,

our prior decision concluding otherwise no longer remains good law.

Accordingly, we may not consider McLaughlin's new evidence or the augmented version of his trial-ineffective-assistance claim based on that evidence. We may only consider, through the deferential lens of AEDPA, whether the state court properly rejected McLaughlin's *original* trial-ineffective-assistance claim. *See Guillory v. Allen*, 38 F.4th 849, 856, 859 (9th Cir. 2022). Here, however, McLaughlin conceded at oral argument that his habeas claim fails on the merits under AEDPA if § 2254(e)(2) bars consideration of his new evidence. *Hilao v. Est. of Marcos*, 393 F.3d 987, 993 (9th Cir. 2004) ("A party . . . is bound by concessions made . . . at oral argument."). Accordingly, McLaughlin's habeas petition necessarily fails.

## III

For these reasons, the judgment of the district court denying McLaughlin's habeas petition is affirmed.

**AFFIRMED.**