**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| KYLE J. RODNEY, | No. 23-15624 |
| *Petitioner-Appellant*, | D.C. No. 3:13-cv-00323-RCJ-VPC |
| v. | |
| TIM GARRETT, Warden; ATTORNEY GENERAL FOR THE STATE OF NEVADA, | OPINION |
| *Respondents-Appellees*. | |

Appeal from the United States District Court
for the District of Nevada
Robert Clive Jones, District Judge, Presiding

Argued and Submitted June 24, 2024
San Francisco, California

Filed September 6, 2024

Before: Ronald M. Gould and Marsha S. Berzon, Circuit
Judges, and Rosemary Márquez,[*] District Judge.

Opinion by Judge Márquez

---

[*] The Honorable Rosemary Márquez, United States District Judge for the District of Arizona, sitting by designation.

**SUMMARY**[**]

**Habeas Corpus**

The panel affirmed the district court's judgment on remand denying Kyle J. Rodney's 28 U.S.C. § 2254 habeas corpus petition challenging his Nevada conviction and sentence for burglary while in possession of a deadly weapon, conspiracy to commit murder, robbery with use of a deadly weapon, conspiracy to commit murder, attempted murder with use of a deadly weapon, and battery with use of a deadly weapon resulting in substantial bodily harm.

In Rodney's prior appeal, the panel vacated and remanded for the district court to determine whether the procedural default of his claims could be excused under *Martinez v. Ryan*, 566 U.S. 1 (2012). The panel directed the district court to determine whether Rodney's ineffective-assistance-of-counsel (IAC) claims were substantial and to allow discovery, hold an evidentiary hearing, and consider new evidence as necessary to determine the substantiality of the claims. While the parties were briefing the *Martinez* issue in district court, the Supreme Court issued *Shinn v. Ramirez*, 596 U.S. 366 (2022). The district court determined that *Shinn* and 28 U.S.C. § 2254(e)(2) precluded it from considering new evidence or conducting an evidentiary hearing when evaluating cause and prejudice under *Martinez*. Considering only evidence in the state-court record, the district court determined that Rodney's IAC

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

claims were not substantial and that the procedural default of the claims could not be excused.

In this appeal, Rodney argued that the district court erred in limiting its analysis to the state-court record and that, when considering the new evidence developed during federal habeas proceedings, his IAC claims are substantial.

The panel rejected Rodney's contention that Appellees waived any arguments based on *Shinn* by failing to seek leave to file a surreply or a supplemental brief in the district court after the Supreme Court issued *Shinn*.

The panel held that, whether considered under the law-of-the-case doctrine or the law-of-the circuit rule, the Supreme Court's decision in *Shinn* constitutes intervening authority that effectively overruled the panel's prior opinion to the extent the prior opinion found that the district court could consider new evidence in evaluating the substantiality of Rodney's IAC claims under *Martinez* without considering § 2254(e)(2).

The panel held that Rodney did not fail to develop the state-court record within the meaning of § 2254(e)(2), and that the district court erred in finding that it could consider only evidence in the state-court record in evaluating the substantiality of Rodney's claims under *Martinez*.

Although the district court erred in limiting its analysis to the state-court record, the panel declined to remand for purposes of allowing the district court to consider Rodney's new evidence in the first instance, because the record is sufficiently complete to allow the panel to hold that Rodney's IAC claims are not substantial. Assuming that Rodney's trial counsel rendered deficient performance by failing to challenge the victim's testimony concerning his

injuries, Rodney cannot establish substantial IAC claims because, even considering his new evidence, there is no reasonable probability that the result of his trial or his sentence would have been different but for counsel's alleged errors.

## COUNSEL

Courtney B. Kirschner (argued) and Jonathan M. Kirshbaum, Assistant Federal Public Defenders; Rene L. Valladares, Federal Public Defender for the District of Nevada; Las Vegas, Nevada; for Petitioner-Appellant.

Elsa Felgar (argued) and Adam L. Woodrum, Deputy Attorneys General, State of Nevada; Aaron D. Ford, Nevada Attorney General; Nevada Office of the Attorney General, Carson City, Nevada; for Respondents-Appellees.

## OPINION

MÁRQUEZ, District Judge:

Kyle J. Rodney ("Rodney") appeals the district court's denial of his petition for a writ of habeas corpus under 28 U.S.C. § 2254. We have jurisdiction under 28 U.S.C. §§ 1291 and 2253, and we affirm.

I.

Rodney was convicted following a jury trial in Nevada state court of burglary while in possession of a deadly weapon, conspiracy to commit robbery, robbery with use of a deadly weapon, conspiracy to commit murder, attempted

murder with use of a deadly weapon, and battery with use of a deadly weapon resulting in substantial bodily harm. He was sentenced to 50 years imprisonment with parole eligibility after 20 years.

Victim Ralph Monko ("Monko") testified as follows at Rodney's trial:

During the night of October 28-29, 2009, Monko won a total of approximately $12,000 at the Hard Rock Casino in Las Vegas, Nevada. Rodney approached Monko in the casino after observing him win nearly $10,000 on a slot machine. Rodney introduced himself as "Patrick," engaged in small talk, and obtained Monko's cell phone number.

When Monko left the casino, he hid $10,000 in his car and kept the rest of his winnings in his pocket. Rodney called Monko, and the two men arranged to meet at a gas station so that Monko could obtain marijuana from Rodney. Rodney arrived at the gas station in a Dodge Ram pickup truck, along with a woman and co-defendant Craig Downing ("Downing"). Rodney and Downing told Monko that they were uncomfortable at the location because there were too many police officers. Monko suggested they follow him to his house.

When he arrived home, Monko drove into his garage and exited his car. Rodney and Downing approached Monko inside the garage, and one or both of them began to beat him with a bat. During the attack, one of the men pulled Monko's hair back and said something like: "You're dead now. You're dead now. We're killing you. You're dead now." Monko then saw one of the men aiming a large knife at his eye; Monko ducked, and the knife hit him in the head. The beating continued, and eventually Monko lost

consciousness.  When he awoke, it was daylight.  His phone, keys, wallet, and the money in his pocket were gone.

The back of Monko's head "was really crushed" as a result of the beating.  The knife sliced his skin down to the skull, cracked his orbital bone, and cut all the nerves.  Before getting medical assistance, Monko couldn't stop the bleeding and "was getting weaker and weaker."  He was taken by ambulance for treatment at Sunrise Hospital.  He needed 24-hour care for a period of time after his release from the hospital.  He suffered severe dizziness and frequent seizures for over two months after the attack.  About two weeks after the attack, he was readmitted to the hospital due to an infection in the back of his neck.  Medical providers were afraid the infection would enter his brain "and that would have been it."  Monko lost his sense of smell and taste as a result of brain damage from the attack, he was numb on the left side of his head due to severed nerves, he had short-term memory problems and difficulty multi-tasking, he had a permanent scar on his forehead, he had "post traumatic syndrome," and he needed to have water drained out of his knee four times.

In addition to presenting Monko's testimony, the prosecution called Melissa Carroll ("Carroll"), a friend of Monko's who assisted him in getting medical help after the attack; George Downey ("Downey"), a paramedic trainee who transported Monko to the hospital; Dennis Reilly, Jr. ("Reilly"), a friend who observed Monko's injuries after the attack; and Ashley Womack ("Womack"), a woman who drove the Dodge Ram to Monko's home and witnessed the attack.  Carroll testified that she called 911 after finding Monko lying on the floor of his bathroom surrounded by blood.  Monko had cuts on his head, his eyes were black and swollen shut, he was shivering, and Carroll was afraid he

was going to die. Downey testified that, when responding paramedics arrived, Monko had lacerations on his head, as well as bruising on his torso and around his eyes. The paramedics transported him to Sunrise Hospital instead of the closest hospital because his injuries fit the criteria for trauma care. Reilly testified that, after the attack, Monko complained of excruciating headaches; he had seizures that resulted in loss of consciousness; and he suffered from short-term memory problems, hair loss, and loss of his sense of taste and smell. Womack testified that she observed Downing hit Monko with a bat he had hidden in his sleeve, watched Monko fall down, and saw Rodney bending over Monko's body, but she did not observe the entirety of the attack because she turned away. It appeared Rodney and Downing were working together. When the group left in the truck, Monko was lying unconscious on his back, and it ran through Womack's mind that he was more than unconscious.

The Nevada Supreme Court affirmed Rodney's convictions on direct appeal. Rodney then filed a pro se post-conviction petition for a writ of habeas corpus in state court. Rodney requested the appointment of post-conviction counsel for purposes of investigation and discovery. The trial court denied the post-conviction petition without appointing counsel or holding an evidentiary hearing, and the Nevada Supreme Court affirmed. Rodney filed a second pro se post-conviction petition and again requested the appointment of counsel. The trial court denied the petition on state procedural grounds without appointing counsel, and the Nevada Supreme Court affirmed.

Rodney then filed a timely pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254 in the United States District Court for the District of Nevada, and later filed an amended petition raising fourteen grounds for relief,

including several ineffective-assistance-of-counsel ("IAC") claims. In relevant part, Rodney asserted in ground three of the amended petition that trial counsel was ineffective in failing to challenge the prosecution's medical evidence, failing to object to the prosecution's presentation of medical testimony via unqualified witnesses, and failing to present expert medical testimony. In ground nine, he asserted that trial counsel was ineffective for failing to review and use Monko's medical records; failing to object to or investigate Monko's testimony that he was readmitted to the hospital as a result of complications from injuries incurred during the assault when he was actually readmitted due to an unrelated staph infection; and failing to impeach Monko with medical records showing that he never mentioned seizures to his doctors and was only on anti-seizure medication as a precaution.

The district court found that grounds three and nine of the amended petition were procedurally defaulted. In a prior appeal, we vacated and remanded for the district court to determine whether the procedural default of the claims could be excused under *Martinez v. Ryan*, 566 U.S. 1 (2012). *See Rodney v. Filson*, 916 F.3d 1254, 1260–63 (9th Cir. 2019). We found that Nevada requires prisoners to raise trial-level IAC claims for the first time in initial-review collateral proceedings and that Rodney was not represented by counsel during his initial-review collateral proceeding. *Id.* at 1260. We directed the district court to determine whether Rodney's IAC claims were substantial and to allow discovery, hold an evidentiary hearing, and consider new evidence as necessary to determine the substantiality of the claims. *Id.* at 1261–62 (citing *Dickens v. Ryan*, 740 F.3d 1302, 1321 (9th Cir. 2014) (en banc)).

On remand, the district court granted Rodney's motion for discovery and allowed the parties to submit new evidence and briefs addressing the substantiality of Rodney's IAC claims under *Martinez*. Rodney submitted excerpts of Monko's medical records; a report by Clinical Nurse Specialist Michelle Woodfall discussing inconsistencies between the medical records and Monko's testimony and opining that Monko's injuries were not life-threatening; and a declaration in which trial counsel avers that, had he been aware of inconsistencies that placed substantial bodily harm at issue, he could have impeached Monko, introduced portions of his medical records into evidence, and called an expert to refute his testimony. Appellees submitted additional medical records, as well as photographs of Monko's injuries.

While the parties were briefing the *Martinez* issue in district court, the United States Supreme Court issued *Shinn v. Ramirez*, 596 U.S. 366 (2022). The district court determined that *Shinn* and 28 U.S.C. § 2254(e)(2) precluded it from considering new evidence or conducting an evidentiary hearing when evaluating cause and prejudice under *Martinez*. Considering only evidence in the state-court record, the district court determined that Rodney's IAC claims were not substantial and therefore that the procedural default of the claims could not be excused pursuant to *Martinez*.

## II.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires that state prisoners exhaust all available state-court remedies before filing a § 2254 petition. 28 U.S.C. § 2254(b)(1). A federal habeas claim is technically exhausted but procedurally defaulted if the state

court declined to address the claim based on independent and adequate state procedural grounds.  *Coleman v. Thompson*, 501 U.S. 722, 729–32 (1991).  A procedural default may be excused if the prisoner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law[.]"  *Id.* at 750.

To demonstrate cause to excuse a procedural default, a prisoner must "show that some objective factor external to the defense impeded [his] efforts to comply with the State's procedural rule."  *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  Because there is no constitutional right to counsel in state post-conviction proceedings, the ineffective assistance of state post-conviction counsel generally cannot establish cause to excuse a procedural default.  *Coleman*, 501 U.S. at 752–54.    However, in *Martinez*, the Supreme Court established a narrow exception to this rule, holding that the absence of or ineffective assistance of counsel at an initial-review collateral proceeding may establish cause to excuse a prisoner's procedural default of substantial claims of ineffective assistance of trial counsel.  566 U.S. at 14; *see also Trevino v. Thaler*, 569 U.S. 413, 423 (2013).

To show that an IAC claim is "substantial," a prisoner "must demonstrate that the claim has some merit." *Martinez*, 566 U.S. at 14.  A claim of ineffective assistance of counsel in violation of the Sixth Amendment requires a showing of both deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To establish deficient performance, a prisoner "must show that counsel's representation fell below an objective standard of reasonableness" under "prevailing professional norms." *Id.* at 688.  To establish prejudice, the prisoner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would

have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

Under 28 U.S.C. § 2254(e)(2), a district court is prohibited from holding an evidentiary hearing on a claim if the prisoner "failed to develop the factual basis" of the claim in state-court proceedings, unless the prisoner can satisfy certain stringent requirements delineated at § 2254(e)(2)(A). In *Shinn*, the Supreme Court determined that, because there is no constitutional right to counsel in state post-conviction proceedings, a prisoner is at fault for failing to develop the factual basis of a claim in state-court proceedings for purposes of § 2254(e)(2) even if the failure resulted from the negligence of post-conviction counsel. 596 U.S. at 371, 382–83. The Court further held that, when a prisoner has failed to develop the factual basis of a claim and cannot satisfy the stringent requirements of § 2254(e)(2)(A), a federal court cannot hold an evidentiary hearing or otherwise consider new evidence, either on the merits of the claim or to assess cause and prejudice under *Martinez*. *Shinn*, 596 U.S. at 389; *see also McLaughlin v. Oliver*, 95 F.4th 1239, 1250 (9th Cir. 2024); *but see Mullis v. Lumpkin*, 70 F.4th 906, 910 & n.3 (5th Cir. 2023).

## III.

The district court granted a certificate of appealability to the extent Rodney's IAC claims impact his convictions for attempted murder with use of a deadly weapon and conspiracy to commit murder. We expand the certificate of appealability to broadly encompass the issue of whether Rodney's trial-level IAC claims are substantial for purposes of *Martinez*. *See* 28 U.S.C. § 2253(c)(2) (a certificate of

appealability may issue "if the applicant has made a substantial showing of the denial of a constitutional right).

## IV.

Rodney argues that the district court erred in limiting its analysis to the state-court record and that, when considering the new evidence developed during federal habeas proceedings, his IAC claims are substantial.

Rodney contends, first, that Appellees waived any arguments based on *Shinn* by failing to seek leave to file a surreply or a supplemental brief in the district court after the Supreme Court issued *Shinn*. However, the Local Rules of the District of Nevada discourage motions for leave to file surreplies, Nev. Dist. Ct. Loc. R. 7-2(b), and Rodney cites no authority holding that a party must seek leave to file a discouraged surreply to avoid waiving arguments based on intervening authority. Furthermore, Rodney has not shown that the district court erred in considering the effect of *Shinn* notwithstanding Appellees' failure to move for leave to file a surreply. *Cf. United States v. Garcia*, 77 F.3d 274, 276 (9th Cir. 1996) (sua sponte examining effect of intervening authority).

Rodney next argues that *Shinn* does not apply when a prisoner was unrepresented during state post-conviction proceedings, and that our prior opinion's holding that the district court could hold an evidentiary hearing remains the law of the case. We hold that, whether considered under the law-of-the-case doctrine or the law-of-the circuit rule, the Supreme Court's decision in *Shinn* constitutes intervening authority that effectively overruled and warrants reconsideration of our prior opinion.

"Under the law of the case doctrine, a court will generally refuse to reconsider an issue that has already been decided by the same court or a higher court in the same case," unless an exception, such as "intervening controlling authority," makes reconsideration appropriate. *Gonzalez v. Arizona*, 677 F.3d 383, 389 n.4 (9th Cir. 2012) (en banc). Under the law-of-the-circuit rule, a published decision of the Ninth Circuit "constitutes binding authority which must be followed unless and until overruled by a body competent to do so." *Id.* (internal quotation marks and citation omitted). Circuit precedent is considered effectively overruled if intervening Supreme Court authority has "undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable." *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc).

We previously found, based on circuit precedent, that § 2254(e)(2) does not bar district courts from holding evidentiary hearings on *Martinez* claims because a state prisoner "seeking to show cause based on a lack of post-conviction counsel is 'not asserting a "claim" for relief as that term is used in § 2254(e)(2).'" *Rodney*, 916 F.3d at 1261 (quoting *Dickens*, 740 F.3d at 1321). The Supreme Court in *Shinn* declined to address that specific proposition, but it irreconcilably undercut the theory by holding that the prohibition on needlessly prolonging federal habeas proceedings forbids the consideration of new evidence to evaluate cause and prejudice under *Martinez* when the new evidence cannot, under § 2254(e)(2), be considered on the merits of the prisoner's IAC claims. 596 U.S. at 388–90. Furthermore, although *Shinn* addressed cases in which the prisoners had been represented by counsel during state post-conviction proceedings, the Supreme Court affirmed that § 2254(e)(2) applies when "'there is lack of diligence, or

some greater fault, *attributable to the prisoner* or the prisoner's counsel.'" *Id.* at 383 (quoting *Williams v. Taylor*, 529 U.S. 420, 432 (2000) (emphasis altered)). Accordingly, *Shinn* effectively overruled our prior opinion to the extent we found that the district court could consider new evidence in evaluating the substantiality of Rodney's IAC claims under *Martinez* without considering § 2254(e)(2).

## V.

Rodney argues in the alternative that § 2254(e)(2) does not preclude factual development in this case because he did not fail to develop the factual bases of his IAC claims in state court within the meaning of that statute. We agree that the district court erred in finding Rodney at fault for purposes of § 2254(e)(2).

Section 2254(e)(2) precludes an evidentiary hearing on a claim only when a prisoner "has failed to develop the factual basis of a claim in State court proceedings." The opening clause of the statute "directs attention to the prisoner's efforts in state court." *Williams*, 529 U.S. at 431. As discussed above, a prisoner fails to develop a claim for purposes of § 2254(e)(2) when "there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Id.* at 432. A finding of diligence "depends upon whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court." *Id.* at 435. A prisoner "is not at fault" for purposes of § 2254(e)(2) "when his diligent efforts to perform an act are thwarted . . . by the conduct of another or by happenstance." *Id.* at 432.

The Supreme Court recognized in *Martinez* that pro se prisoners are "in no position to develop the evidentiary basis for a claim of ineffective assistance, which often turns on

evidence outside the trial record." 566 U.S. at 12.  In *Alberni v. McDaniel*, we found that a prisoner was diligent in his efforts to develop the state-court record where he requested the appointment of post-conviction counsel and his request was denied.  458 F.3d 860, 873 (9th Cir. 2006).  Similarly, here, Rodney requested the appointment of post-conviction counsel during his initial-review collateral proceeding and specifically argued that counsel was necessary to proceed with discovery and investigation.  The state court did not appoint counsel, did not allow discovery, and declined to hold an evidentiary hearing.[1]  Rodney's IAC claims hinge on Monko's medical records and expert testimony.  An indigent prisoner who is denied counsel and discovery has no practical likelihood of obtaining a victim's medical records or procuring expert testimony.  By requesting the appointment of counsel and arguing that counsel was necessary for purposes of investigation and discovery, Rodney did all that he could to develop the evidentiary bases of his IAC claims in state court.  Accordingly, he did not fail to develop the state-court record within the meaning of § 2254(e)(2), and the district court erred in finding that it could consider only evidence in the state-court record in evaluating the substantiality of Rodney's IAC claims under *Martinez*.

---

[1] In Nevada, a court may allow discovery and expansion of the record during post-conviction proceedings only if the court determines that an evidentiary hearing is required.  *See* N.R.S. § 34.780(2); N.R.S. § 34.790(1).  The court must determine whether an evidentiary hearing is required, regardless of whether a petitioner requests such a hearing. *See* N.R.S. § 34.770(1).

## VI.

Although we hold that the district court erred in limiting its analysis to the state-court record, we decline to remand for purposes of allowing the district court to consider Rodney's new evidence in the first instance, because the record is "sufficiently complete" to allow us "to hold without hesitation" that Rodney's IAC claims are not substantial. *Sexton v. Cozner*, 679 F.3d 1150, 1161 (9th Cir. 2012). Assuming that Rodney's trial counsel rendered deficient performance by failing to challenge Monko's testimony concerning his injuries, Rodney nevertheless cannot establish substantial IAC claims under the *Strickland* standard because, even considering his new evidence, there is no reasonable probability that the result of his trial would have been different but for counsel's alleged errors.

The alleged errors of trial counsel do not impact Rodney's convictions for burglary while in possession of a deadly weapon, conspiracy to commit robbery, and robbery with use of a deadly weapon. With respect to his conviction for battery with use of a deadly weapon resulting in substantial bodily harm, Rodney argues that there is a reasonable probability the jury would not have found substantial bodily harm but for counsel's alleged errors. With respect to his convictions for attempted murder with use of a deadly weapon and conspiracy to commit murder, Rodney argues that the jury may not have found the intent-to-kill element. He further argues that impeaching Monko with his medical records or through an expert witness would have led the jury to disbelieve the entirety of Monko's testimony. But even if the jury had entirely discredited Monko's testimony, there was sufficient corroborating evidence to preclude any reasonable probability of an acquittal.

Nevada law defines "substantial bodily harm" as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement," the "protracted loss or impairment of the function of any bodily member or organ," or "[p]rolonged physical pain." N.R.S. § 0.060. Taken together, the evidence presented at trial and the new evidence developed during Rodney's federal habeas proceedings shows that Monko suffered prolonged physical pain: Reilly testified that Monko complained of excruciating headaches after the attack, and the Sunrise Hospital medical records reflect that Monko complained of pain during his initial visit to the hospital and during multiple subsequent visits, and was repeatedly prescribed pain medication. Given that a finding of prolonged physical pain is sufficient on its own to establish substantial bodily harm, there is no reasonable probability that the jury would not have found substantial bodily harm, even if trial counsel had challenged Monko's testimony concerning his injuries. Furthermore, evidence beyond Monko's testimony shows that Monko also suffered bodily injury creating a substantial risk of death, permanent disfigurement, and the protracted loss or impairment of the function of any bodily member or organ. The jury viewed a permanent scar that Monko incurred as a result of the attack, and Monko's testimony concerning the loss of his sense of taste and smell was corroborated by Reilly's testimony. In addition, the nature of Monko's injuries indicate he sustained lacerations from a knife or other sharp object, and Womack testified that Monko was beaten with a bat until he lost consciousness. Even if defense counsel had presented expert testimony that Monko's injuries were ultimately not life-threatening, the injuries were of a type that create a substantial risk of death. There is no reasonable probability that a jury would have found

Rodney not guilty of battery with use of a deadly weapon resulting in substantial bodily harm if trial counsel had challenged Monko's testimony concerning the extent of his injuries.

There is also no reasonable probability that, but for trial counsel's alleged errors, the jury would not have found the intent-to-kill element of the attempted murder with use of a deadly weapon and conspiracy to commit murder charges. An intent to kill under Nevada law may be "inferred by the jury from the individualized, external circumstances of the crime," including "from the manner of the defendant's use of a deadly weapon." *Valdez v. State*, 196 P.3d 465, 481 (Nev. 2008); *see also* N.R.S. § 193.200. Monko's testimony provided the only evidence that either defendant stated, "You're dead now. We're killing you." But other evidence showed that Rodney targeted and pursued Monko, that the attack on Monko was premeditated, and that Rodney left Monko unconscious in a pool of his own blood. Surveillance footage from the casino showed Rodney watching, and eventually approaching, Monko after his slot machine win, and Monko's phone records included calls between him and Rodney leading up to the time of the attack. Womack testified that, at the request of Rodney's girlfriend, she drove Rodney and Downing to the casino to meet a "friend" who had won $9,000; along the way, Rodney talked to someone on the phone, then instructed Womack to drive to the gas station instead. According to Womack, Downing began to beat Monko immediately upon entering Monko's garage with a bat that he had hidden up his sleeve; Downing and Rodney appeared to be working together; and Monko was unconscious, or possibly worse, when they drove away. There is no reasonable probability the jury would not have found an intent to kill where Rodney coordinated the meet-

up with Monko, at minimum stood watch while Downing beat Monko with a deadly weapon, and left Monko alone and unconscious, with grievous injuries.

Monko's testimony provided the only evidence that Rodney handled a weapon or struck or stabbed the victim.[2] But Rodney was charged with battery and attempted murder under conspiracy and aiding and abetting theories, in addition to principal liability. The prosecution was not required to prove that Rodney personally carried out each act constituting the offenses for the jury to find Rodney guilty under conspiracy and aiding and abetting theories. *See Washington v. State*, 376 P.3d 802, 809 (Nev. 2016) ("[a] person who knowingly does any act to further the object of a conspiracy, or otherwise participates therein, is criminally liable as a conspirator"); *Sharma v. State*, 56 P.3d 868, 873 (Nev. 2002) (an accomplice with the requisite mens rea is as culpable as the person who actually perpetrates the offense); *see also* N.R.S. § 195.020.[3]

Accordingly, even if trial counsel had presented expert witness testimony that Monko's injuries were ultimately not life-threatening, and even if trial counsel had successfully precluded or impeached the entirety of Monko's testimony, there was still significant evidence supporting the conspiracy, attempted murder, and battery charges.

---

[2] Womack testified that she never saw a knife, nor did she see Rodney strike Monko or hold a weapon, but she was turned away from the garage for much of the beating.

[3] With respect to the battery charge, the evidence showing an intent to kill also supports a finding that Rodney intended for a "willful and unlawful use of force or violence" to be used upon Monko. N.R.S. § 200.481(a); *see also Washington*, 376 P.3d at 809; *Sharma*, 56 P.3d at 873.

Finally, Rodney argues that, but for trial counsel's alleged errors, the result of his sentencing would have been different.   But Rodney cannot establish prejudice at sentencing, because the inconsistencies between Monko's trial testimony and his medical records do not undermine the trial judge's observation at sentencing that Rodney and Downing went "beyond just robbing" Monko and "beat[] him senselessly."  Given the severity of Monko's injuries as reflected in his medical records, there is no reasonable probability that the result of Rodney's sentencing would have been different but for trial counsel's alleged errors.

AFFIRMED.