

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| GARY CRAIG ROSALES, | No. 23-15081 |
| Petitioner-Appellant, | DC No. 3:16-cv-00003-RCJ-CSD |
| v. | |
| RONALD OLIVER; ATTORNEY GENERAL FOR THE STATE OF NEVADA; DWIGHT NEVEN, Warden, | MEMORANDUM[*] |
| Respondents-Appellees. | |

Appeal from the United States District Court
for the District of Nevada
Robert Clive Jones, District Judge, Presiding

Argued and Submitted January 13, 2025
Pasadena, California

Before:    TASHIMA, RAWLINSON, and M. SMITH, Circuit Judges.
Concurrence by Judge RAWLINSON.

Petitioner/Appellant Gary Rosales appeals from an order of the district court

denying his petition for writ of habeas corpus under 28 U.S.C. § 2254.  We have

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

jurisdiction under 28 U.S.C. §§ 1291 and 2253, and we affirm in part and reverse and remand in part.

1.      The state court's rejection of Rosales' first claim violated "clearly established Federal law" and "was based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d)(1) & (2). We therefore reverse the district court's denial of Rosales' claim that trial counsel was ineffective by failing to move to suppress evidence on the ground that the police violated the Fourth Amendment when they entered his mother's apartment.

The state court unreasonably determined that Rosales failed to raise attenuation in his state habeas petition. Contrary to the court's finding, Rosales did raise attenuation. The state court also violated clearly established federal law by erroneously placing the burden on Rosales to establish that attenuation did not apply, rather than on the government to establish that it did apply. *See Brown v. Illinois*, 422 U.S. 590, 604 (1975) (concluding that "the State failed to sustain the burden of showing that the evidence in question was admissible under *Wong Sun* [*v. United States*, 371 U.S. 471 (1963)]" as sufficiently purged of the taint of the primary illegality).

Because the state court's decision is contrary to clearly established federal law, we review Rosales' claim de novo. *See Marks v. Davis*, 106 F.4th 941, 968

2

(9th Cir. 2024) ("When a state court's adjudication of a claim is dependent on an antecedent unreasonable application of federal law, the requirement set forth in § 2254(d)(1) is satisfied. A federal court must then resolve the claim without the deference [the Antiterrorism and Effective Death Penalty Act (AEDPA)] otherwise requires." (internal citation omitted)); *Michaels v. Davis*, 51 F.4th 904, 924 (9th Cir. 2022) (per curiam) ("Because the California Supreme Court's decision rested on an application of *Miranda* contrary to clearly established federal law, we review de novo the aspects of Michaels's selective invocation of *Miranda* claim."), *cert. denied*, 144 S. Ct. 914 (2024). We conclude that trial counsel was ineffective for failing to move to suppress evidence based on the officers' unlawful entry into Rosales' mother's apartment.

First, the record clearly shows that the officers' warrantless entry into Rosales' mother's apartment violated the Fourth Amendment. The exigent circumstances exception to the warrant requirement does not apply because the officers had no "objectively reasonable basis" for believing that there was any "need to assist persons who are seriously injured or threatened with such injury." *Brigham City v. Stuart*, 547 U.S. 398, 403, 406 (2006); *cf. Michigan v. Fisher*, 558 U.S. 45, 48, 49 (2009) (per curiam) (finding "'an objectively reasonable basis for believing' that medical assistance was needed, or persons were in danger," where

3

officers were responding to a report of a disturbance and found "a tumultuous situation in the house," "signs of a recent injury, perhaps from a car accident, outside," and "violent behavior inside" (quoting *Brigham City*, 547 U.S. at 406)). Unlike *Brigham City* or *Fisher*, where officers arrived at a home in response to a disturbance call and saw signs of injury or fighting, there was nothing in the record that would have given the officers a reasonable basis for believing that someone inside the home was in need of assistance. Because there was no evidence that the officers encountered an emergency, no reasonable attorney could have concluded that the emergency exception to the warrant requirement applied.

The State's attempts to rely on the community caretaking exception to the warrant requirement and Rosales' purported lack of standing to challenge the entry are easily rejected. The community caretaking exception is not relevant here because there is nothing in the record to indicate that the officers were conducting a community caretaking function when they entered the apartment. *See Cady v. Dombrowski*, 413 U.S. 433, 441 (1973) (explaining that "the extensive regulation of motor vehicles and traffic," as well as "the frequency with which a vehicle can become disabled or involved in an accident on public highways," required officers to perform "community caretaking functions," which meant that "the extent of police-citizen contact involving automobiles will be substantially greater than

4

police-citizen contact in a home or office"). Rosales clearly had standing because the record establishes that he was staying with his mother after helping her move into the apartment, he had moved his own belongings into the apartment and the senior omplex where his mother was staying permitted visiors to remain for up to a month. No reasonable attorney could have concluded that he lacked standing to challenge the entry. *See Minnesota v. Carter*, 525 U.S. 83, 89 (1998) (stating that, in *Minnesota v. Olson*, 495 U.S. 91 (1990), the Court "decided that an overnight guest in a house had the sort of expectation of privacy that the Fourth Amendment protects").

2.      Rosales' mother's purported consent to the search was not sufficiently attenuated from the unlawful entry. First, only about ten to fifteen minutes passed between the entry and the request for consent. *See United States v. Garcia*, 974 F.3d 1071, 1076 (9th Cir. 2020) (listing the three factors to consider "[i]n determining whether an intervening event has sufficiently purged the taint of a preceding Fourth Amendment violation," the first of which is "the 'temporal proximity' between the unconstitutional conduct and the discovery of evidence" (quoting *Utah v. Strieff*, 579 U.S. 232, 239 (2016))). As to the second factor, there were no intervening circumstances, such as the discovery of the existence of a valid arrest warrant, *Strieff*, 579 U.S. at 236, or the discovery of a live witness,

whose testimony "was an act of her own free will in no way coerced or even induced by official authority as a result of" the Fourth Amendment violation, *United States v. Ceccolini*, 435 U.S. 268, 279 (1978). The third factor, "the purpose and flagrancy of the official misconduct," also weighs in favor of suppression. *Garcia*, 974 F.3d at 1076 (quoting *Strieff*, 579 U.S. at 239). The record contains nothing to indicate that the officers saw anything illegal when they entered that would have given them a reason to search. *See United States v. Washington*, 387 F.3d 1060, 1076–77 (9th Cir. 2004) (stating that the record was clear that the officers wanted to search the suspect's room "to obtain evidence of criminal activity," that nothing "the officers observed transformed their *lack* of probable cause to search [his] room into probable cause," and that their unconstitutional entry was "investigatory"). In particular, because the officers did not limit their search to the boxes that Rosales' mother indicated belonged to Rosales, but instead, searched her belongings as well, the record shows that the officers were "on a fishing expedition 'in the hope that something [illegal] might turn up.'" *United States v. Washington*, 490 F.3d 765, 777 (9th Cir. 2007) (quoting *Brown*, 422 U.S. at 605). As in *Washington*, the officers "unconstitutionally capitalized on their prior violations of [Rosales'] Fourth Amendment rights" by following their illegal entry with an illegal search. *Washington*, 387 F.3d at 1076.

6

All three factors thus favor suppression, and the government has not pointed to evidence establishing that the connection between the unconstitutional police conduct and the evidence is remote or has been interrupted by an intervening circumstance. *Strieff*, 579 U.S. at 238.

Trial counsel's failure to move to suppress the evidence based on the unlawful entry thus "'fell below an objective standard of reasonableness' under 'prevailing professional norms.'" *Rodney v. Garrett*, 116 F.4th 947, 954 (9th Cir. 2024) (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)). Trial counsel's testimony that he "may have missed" the issue of the officers' illegal entry into the home, indicates that his failure to do so was not a "strategic choice[] made after thorough investigation of law and facts." *Catlin v. Broomfield*, 124 F.4th 702, 727 (9th Cir. 2024) (quoting *Strickland*, 466 U.S. at 690); *see Noguera v. Davis*, 5 F.4th 1020, 1039 (9th Cir. 2021) (stating that, in considering ineffective assistance claims, "[a]n attorney's strategic choices are entitled to deference when they are 'made after counsel has conducted "reasonable investigations or [made] a reasonable decision that makes particular investigations unnecessary"'" (quoting *Summerlin v. Schriro*, 427 F.3d 623, 630 (9th Cir. 2005) (en banc))).

In addition to establishing deficient performance, Rosales also has shown prejudice. *See Rodney*, 116 F.4th at 954 ("A claim of ineffective assistance of

counsel in violation of the Sixth Amendment requires a showing of both deficient performance and prejudice."). The police officers discovered a gun as a result of the unlawful entry and the resulting search, and the record is clear that Rosales confessed during the second interview because of his knowledge that the officers had discovered the gun. Before the search, Rosales denied all involvement, but after the officers showed him the gun, he confessed to everything *See United States v. Shetler*, 665 F.3d 1150, 1158 (9th Cir. 2011) (stating that "the answers the suspect gives to officials questioning him may be influenced by his knowledge that the officials had already seized certain evidence," because "[c]onfronting a suspect with illegally seized evidence tends to induce a confession by demonstrating the futility of remaining silent," and concluding that the government had produced "no evidence to demonstrate that the answers [the suspect] gave to the government officials' questions were not induced or influenced by the illegal search" (quoting 6 Wayne R. LaFave, Search and Seizure 307, § 11.4(c) (4th ed. 2004))). Thus, both the gun and the confession should have been suppressed. *See Garcia*, 974 F.3d at 1075 (explaining that the exclusionary rule "encompasses evidence directly 'seized during an unlawful search' as well as '[e]vidence derivative of a Fourth Amendment violation — the so-called "fruit of the poisonous tree"'" (quoting *United States v. Gorman*, 859 F.3d 706, 716 (9th Cir. 2017))).

The entry clearly was unlawful, and the resulting evidence – the gun and the confession – were key pieces of evidence in the prosecution's case. Thus, "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Rodney*, 116 F.4th at 954 (quoting *Strickland*, 466 U.S. at 694). We therefore grant Rosales' petition as to the claim of ineffective assistance based on the unlawful entry, reverse the conviction, and remand for the state court to retry the case without admission of the gun and confession.

3.    Rosales has not established cause and prejudice to excuse the procedural default of his claim of ineffective assistance regarding the recusal of the trial judge. *See Rodney*, 116 F.4th at 954 (explaining that "[a] federal habeas claim is technically exhausted but procedurally defaulted if the state court declined to address the claim based on independent and adequate state procedural grounds," and that, in order to excuse the procedural default, the petitioner must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law" (quoting *Coleman v. Thompson*, 501 U.S. 722, 729–32, 750 (1991))). *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009), does not help Rosales meet his burden of showing that "the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say . . .

9

that the claim has some merit." *Martinez v. Ryan*, 566 U.S. 1, 14 (2012). The district attorney's endorsement of the trial judge's previous judicial campaign is nothing like the "exceptional" circumstances of *Caperton*, in which a litigant "had a significant and disproportionate influence in placing the judge on the case by raising funds or directing the judge's election campaign when the case was pending or imminent." *Caperton*, 556 U.S. at 884; *see also City of Las Vegas Downtown Redev. Agency v. Hecht*, 940 P.2d 127, 129 (Nev. 1997) (per curiam) ("[W]e continue to believe that to permit a justice or judge to be disqualified on the basis of bias for or against a litigant's counsel in cases in which there is anything but an extreme showing of bias would permit manipulation of the court and significantly impede the judicial process and the administration of justice.").

• ● •

For the foregoing reasons, we reverse the district court's denial of Rosales' claim that trial counsel was ineffective for failing to move to suppress the evidence based on the officers' unlawful entry. We affirm the denial of Rosales' motion as to the recusal of the trial judge.

**AFFIRMED in part, REVERSED in part, and REMANDED.**



*Rosales v. Najera*, Case No. 23-15081
**Rawlinson, Circuit Judge, concurring in result:**

 I concur in the result.