**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

CHARLES BRADLEY
RIENHARDT,

*Petitioner-Appellant*,

v.

RYAN THORNELL,

*Respondent-Appellee*.

No.10-99000

D.C. No.4:03-CV-00290-DCB

OPINION

Appeal from the United States District Court
for the District of Arizona
David C. Bury, District Judge, Presiding

Argued and Submitted September 11, 2025
San Francisco, California

Filed June 15, 2026

Before: Milan D. Smith, Jr., Eric D. Miller, and Danielle J.
Forrest, Circuit Judges.

Opinion by Judge Forrest

# SUMMARY[*]

## Habeas Corpus / Death Penalty

The panel affirmed the district court's denial of Charles B. Rienhardt's habeas corpus petition challenging his Arizona conviction and death sentence for first-degree murder, kidnapping, attempted transfer of a dangerous drug, and attempted arson.

Rienhardt raised three certified ineffective-assistance-of-counsel (IAC) claims and sought certification of two additional claims.

In support of his IAC-based claims, Rienhardt partially relied on evidence that had not been presented to the state courts during direct review or post-conviction relief (PCR) proceedings. Applying 28 U.S.C. § 2254(e)(2) and *Shinn v. Ramirez*, 596 U.S. 366 (2022), the panel held that the district court did not err in declining to consider the new evidence or to allow development of the state court record.

The panel reviewed Rienhardt's certified claims under the deferential standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), and the Antiterrorism and Effective Death Penalty Act.

In his first certified claim, Rienhardt argued that trial counsel Eric Larsen had a conflict of interest and provided ineffective assistance by not procuring substitute counsel after the prosecution indicated that it might call him to testify about his conversation with Rienhardt's girlfriend Christina

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

George. The panel held that the state court's rejection of this claim was not contrary to or an unreasonable application of *Cuyler v. Sullivan*, 446 U.S. 335 (1980), or *United States v. Cronic*, 466 U.S. 648 (1984), and that even if Larsen had provided deficient representation in his handling of George's testimony, Rienhardt cannot establish prejudice. The panel rejected Rienhardt's argument that the state court's denial of this claim was based on an unreasonable determination of facts.

In his second certified claim, Rienhardt argued that Larsen had a conflict of interest because he was romantically interested in potential witness Anjanette Ortiz and prioritized his romantic interests over Rienhardt's interests by not calling Ortiz as a witness because she was afraid to testify. Ortiz is Rienhardt's ex-girlfriend and the mother of his child. The panel held that the district court properly held that this claim is procedurally defaulted and that the default is not excused.

In his third certified claim, Rienhardt argued that Larsen provided ineffective assistance by failing to investigate or present mitigation evidence at sentencing. The panel held that Rienhardt's three exhausted subclaims—failure to (1) investigate any mitigation, (2) adequately advise Rienhardt about mitigation, and (3) present a mitigation case—fail on the merits because, even assuming Larsen provided ineffective representation, Rienhardt cannot show prejudice. The panel held that a procedurally defaulted subclaim—that Larsen failed to file a sentencing memorandum—is without merit because, limited to the state court record, it has no supporting evidence. As to a second procedurally defaulted subclaim—that Larsen failed to seek an expert to perform "neuropsychological and educational testing"—the panel held that even setting aside Rienhardt's

waiver of mitigation, he cannot show cause under *Martinez v. Ryan*, 566 U.S. 1 (2012), because he relies on evidence developed after his initial state PCR proceedings.

The panel declined to expand the certificate of appealability to cover Rienhardt's uncertified claims (1) that admission of Larsen's interview of George violated his rights to counsel, confrontation, and due process and (2) that the Arizona Supreme Court wrongly required a causal nexus between the crime and the mitigation factors.

## COUNSEL

Julie S. Hall (argued), Law Offices of Julie S. Hall, Oracle, Arizona; Amy S. Armstrong, Arizona Capital Representation Project, Tucson, Arizona; for Petitioner-Appellant.

Jeffrey L. Sparks (argued), Senior Litigation Counsel; Jason D. Lewis, Deputy Solicitor General, Section Chief; Capital Litigation Section; Kristin K. Mayes, Arizona Attorney General; Office of the Arizona Attorney General, Phoenix, Arizona; for Respondents-Appellees.

## OPINION

FORREST, Circuit Judge:

Arizona death-row inmate Charles B. Rienhardt appeals the denial of his petition for a writ of habeas corpus. He raises three certified ineffective-assistance-of-counsel (IAC) claims, and he seeks certification of two additional claims. We have jurisdiction under 28 U.S.C. § 1291, and we affirm the district court because Rienhardt has not shown that he is entitled to relief under the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub. L. No. 104–132, 110 Stat. 1214 (1996), or that his uncertified claims raise issues that are "debatable among jurists of reason," *Buck v. Davis*, 580 U.S. 100, 122 (2017).

## BACKGROUND

### A. Rienhardt's Crimes

The relevant facts were recounted by the Arizona Supreme Court in affirming Rienhardt's conviction and sentence on direct appeal.[1] *See Arizona v. Rienhardt*, 951 P.2d 454 (Ariz. 1997).

On September 4, 1995, Rienhardt arranged to meet Michael Ellis and James Breedlove at a friend's apartment to buy methamphetamines. *Id.* at 457. Rienhardt gave Breedlove money to acquire the drugs while Rienhardt remained at the apartment with Ellis. *Id.* When Breedlove did not return, Rienhardt threatened to "take Ellis on a hike

---

[1] A state court's factual determination is presumptively correct. *See, e.g.*, *Prescott v. Santoro*, 53 F.4th 470, 474 n.1 (9th Cir. 2022) (citing *Hernandez v. Small*, 282 F.3d 1132, 1135 n.1 (9th Cir. 2002)).

in the desert, blindfold him, hang him over the edge of a cliff, remove the blindfold, and drop him." *Id.* at 457–58.

After midnight, Rienhardt's friend Charles Nadeau joined him at the apartment. *Id.* at 458. Breedlove called and said the drug deal was taking longer than anticipated, and Rienhardt informed Breedlove that he would increasingly hurt Ellis for every ten-minute increment that Breedlove failed to return. *Id.* Breedlove never returned. *Id.*

Rienhardt and Nadeau transported Ellis from the apartment into the mountains. *Id.* Two witnesses who arrived at the apartment after the trio had departed reported seeing "a trail of blood leading from the apartment, blood on the living room carpet, blood on Ellis's chair, and pieces of teeth on the floor." *Id.* They also saw "a shotgun on a couch near where Ellis had been seated." *Id.* It was later discovered that Rienhardt and Nadeau killed Ellis in the mountains. *See id.*

At some point that night, Rienhardt called Christina George, his girlfriend, for a ride. *Id.* When George picked up the two men, Rienhardt explained that the white Buick they had been driving got stuck on a rock. *Id.* George helped the men dislodge the Buick and the three of them drove both cars back to town. *Id.* After meeting back up at a shopping center, the group decided to burn the Buick, presumably to destroy the evidence inside. *See id.* While George and Nadeau prepared to burn the Buick, a sheriff's deputy approached. *Id.* The three friends fled in a stolen vehicle and were arrested after a police chase. *Id.* Police discovered smeared blood on the driver's side of the Buick, a bloody towel, and a large bloodstain in the back seat. *Id.* They also found Ellis's wallet and a shotgun with a missing stock. *Id.*

The next evening, Nadeau led police to Ellis's body. *Id.* Ellis had been "severely beaten" on both his head and body,

was shot multiple times by a shotgun, and "had one or two large rocks dropped on his head." *Id.* George testified that, when she picked up Rienhardt the night of Ellis's murder, Rienhardt told her that Ellis died after Rienhardt and Nadeau dropped rocks on his head. *Id.* He remarked, "I have brains all over my pants." *Id.* Near Ellis's body, police located a pool of blood and pieces of a shotgun stock that matched the make and model of the weapon found in the Buick. *Id.*

Rienhardt was charged with first-degree murder, kidnapping, attempted transfer of a dangerous drug, and attempted arson. *Id.* at 457. Nadeau and George also were charged with various felonies. *See id.* at 458.

## B. Trial

Rienhardt's case was tried to a jury.[2] His defense was based, in part, on attacking George's credibility because she changed her story over the course of the investigation. *See id.* at 461. According to Rienhardt, George initially implicated only Nadeau in Ellis's murder, but she implicated Rienhardt after accepting a plea offer. *Id.* Before George testified, however, the prosecution learned that Rienhardt's trial attorney, Eric Larsen, talked to George shortly after her arrest. *Id.* Their conversation was not recorded, but George indicated that in the initial interview she told Larsen that Rienhardt had killed Ellis but that she was willing to change her story to help Rienhardt. *Id.* The prosecutor moved for a mistrial and, alternatively, stated that the state intended to use George's conversation with defense counsel as evidence of a prior consistent statement to rebut Rienhardt's assertion that George changed her story only after receiving a

---

[2] Nadeau's trial was severed, and George pled guilty in exchange for her testimony against Rienhardt. *Rienhardt*, 951 P.2d at 458.

favorable plea deal. *Id.* The prosecutor argued that Larsen had made himself a witness by not recording his conversation with George. *Id.*

The trial court denied the state's motion for a mistrial and ruled that evidence of the conversation would be admissible on the state's redirect examination if Larsen opened the door on cross-examination. *Id.* at 461–62. Larsen did not object. *Id.* at 462. And during cross-examination, Larsen elicited extensive impeaching evidence. George admitted that she changed her story and had omitted details in her communications with the prosecution. She also detailed her favorable plea deal that included the possibility of a probationary sentence, even though she was facing several decades of incarceration. Larsen elicited that George had a prior armed robbery conviction and that she later denied having a gun in connection with that crime. Larsen further confronted George with two angry letters that she wrote to Rienhardt shortly before implicating him in Ellis's death. The jury also heard that George was a heavy drug user at the time of the crime and, despite initially denying being high the night of the murder, had used cocaine that day.

When the prosecution asked George about her initial meeting with Larsen on redirect examination, after her arrest, Larsen objected and argued that he had not opened the door to this evidence. The court overruled his objection. *See id.* George testified that she met with Larsen before she met with anyone from the prosecution and that she told Larsen that Rienhardt shot Ellis and dropped the rocks that killed him. She also admitted that she told Larsen she would change her story to help Rienhardt. The prosecutor also walked George through a series of letters that Rienhardt wrote to her encouraging her to "hang tough" and stick to her story in his favor.

Although Larsen re-crossed George, he did not ask about their pretrial conversation. *Id.* The jury ultimately returned a guilty verdict on all counts. *Id.*

## C. Sentencing

Before sentencing, the trial court held a hearing for the parties to present aggravating and mitigating evidence. Through counsel, Rienhardt expressly declined to present any mitigation. *Id.* at 466. In response to the court's invitation, Larsen stated that, "[b]ased on conversation with [Rienhardt, he] would decline to present mitigating information." Larsen explained that Rienhardt believed, for "personal reasons and for reasons regarding his appellate status," that it was in his "best interest" not to present mitigating evidence. He further explained that he had spoken with Rienhardt on three separate occasions about his decision and that Rienhardt continued to believe it was "a reasonable strategy" and "instructed [Larsen] to follow [] through."

The trial court discussed with Rienhardt the structure of capital sentencing and the importance of sentencing evidence. The court explained that the evidence the state presented would be used "for the purpose of its intention to ask the [c]ourt to seek the death penalty," and that Rienhardt had the opportunity to present mitigating evidence "to persuade [t]he [c]ourt not to impose that penalty." Rienhardt affirmed that he understood the proceedings and wished to forgo presenting mitigation evidence. Based on his conversation with and observation of Rienhardt, the trial court concluded that his waiver was "voluntary" and "knowing."

At sentencing, the trial court began by asking Rienhardt if he would like to say anything. Rienhardt denied his

involvement in the crime and criticized the state's handling of the case. Rienhardt also declined to express remorse: "I hope this Court wasn't expecting me to stand up here today and start crying or begging . . . for mercy . . . . [Or] to . . . apologize to Mr. Ellis's family," because "I will be damned if I'm going to take responsibility for Mr. Nadeau's actions."

Based on the state's evidence, the trial court found that three aggravating factors had been proven beyond a reasonable doubt: (1) Rienhardt was previously convicted of a "crime of violence;" (2) Ellis's murder was committed in an especially heinous, cruel, and depraved manner; and (3) Rienhardt committed the murder for pecuniary gain.[3] *Rienhardt*, 951 P.2d at 464–66. Despite Rienhardt's failure to present any mitigation evidence, the court also found that the following, non-statutory mitigating circumstances had been established: "alcohol consumption, past drug use, family support, and employment history." *Id.* at 467. But the court concluded that the mitigating factors, either alone or collectively, did not outweigh the aggravating factors. *Id.* Accordingly, it sentenced Rienhardt to death on the first-degree murder conviction and to terms of imprisonment on the remaining convictions. *Id.* at 457.

## D.  Direct Appeal

Rienhardt's appeal from his conviction and sentence proceeded directly to the Arizona Supreme Court. *Id.* (citing Ariz. Rev. Stat. § 13–4031). He challenged the trial court's admission of George's testimony about her unrecorded conversation with Larsen and the trial court's weighing of

---

[3] Rienhardt was sentenced to death based on judicial factfinding before the Supreme Court held this procedure unconstitutional in *Ring v. Arizona*, 536 U.S. 584 (2002). *Ring* does not apply retroactively. *Schriro v. Summerlin*, 542 U.S. 348, 353 (2004).

the aggravating and mitigating evidence. *See id.* at 458–59. The Arizona Supreme Court affirmed Rienhardt's conviction. It held that admission of George's testimony about her conversation with Larsen was not error. *Id.* at 462. It reversed the trial judge's finding that Rienhardt murdered Ellis for pecuniary gain, *id.* at 466, but it affirmed the other aggravating-factors findings, *id.* at 464–65. And after independently reweighing the aggravating and mitigating factors, the court affirmed Rienhardt's death sentence. *Id.* at 466–68. The United States Supreme Court denied Rienhardt's petition for a writ of certiorari. *Rienhardt v. Arizona*, 525 U.S. 838 (1998) (mem).

### E. State Post-Conviction Proceedings

Rienhardt filed his first petition for state post-conviction relief (PCR) in 2000. Among other things, he argued that Larsen provided ineffective assistance by making himself an adverse witness concerning his unrecorded conversation with George, by not requesting a mistrial after his conversation with George came to light, and by not presenting any mitigation at sentencing. The Arizona courts rejected Rienhardt's IAC claim on the merits.

Rienhardt filed a second state PCR petition in 2005, raising additional IAC claims relating to Larsen's performance at trial and sentencing. One of these claims asserted that Larsen failed to adequately investigate potential mitigation evidence.[4] The Arizona courts dismissed Rienhardt's new IAC theories as precluded under Arizona's

---

[4] This claim, focused on Larsen's *investigation* of mitigation evidence, differed from the sentencing-IAC claim raised in Rienhardt's first state PCR petition asserting that Larsen failed to *present* a mitigation case. We address Rienhardt's IAC theories related to his sentencing as one IAC claim. *See infra* Discussion § B.3.

requirement that petitioners raise all potentially available claims in their first state PCR petition subject to a few inapplicable exceptions. *See* Ariz. R. Crim. Pro. 32.2 (2005) (amended 2025). Rienhardt filed a third state PCR petition in 2019 based on DNA evidence and claims not at issue in this appeal. This petition was also denied.

## F.  Federal Habeas Proceedings

Rienhardt filed his federal habeas petition in 2003, which he subsequently amended. As relevant here, Rienhardt asserted the following claims:

(1) Larsen had a conflict of interest and provided ineffective assistance by not procuring substitute counsel or requesting a mistrial after the prosecution indicated that it might call him to testify about his conversation with George (Claim A(6)) (Attorney-as-Witness Claim).

(2) Larsen had a conflict of interest and provided ineffective assistance because he had a romantic interest in a potential witness whom he did not call to testify at trial or sentencing (Claim C(2)) (Attorney-Romance Claim).

(3) Larsen provided ineffective assistance by failing to investigate or present mitigation evidence at sentencing (Claims B(1)–(3), (5), (7)) (Mitigation Claim).

(4) Admission of Larsen and George's conversation violated Rienhardt's

       constitutional rights to effective counsel, confrontation of witnesses, and due process (Claim C(1)) (Evidence Claim).

(5) The Arizona courts violated due process and the Eighth Amendment by improperly requiring a causal nexus between Rienhardt's crime and the mitigation factors considered at sentencing (Claim K) (Causal-Nexus Claim).

Rienhardt also sought discovery, expansion of the record, and an evidentiary hearing on each of his claims.

In 2005, the district court permitted the Attorney-as-Witness Claim, most of the Mitigation Claim[5], and the Evidence Claim to proceed. The district court dismissed the Attorney-Romance Claim as procedurally defaulted, and the Causal-Nexus Claim as "plainly meritless" as to the trial court and unexhausted as to the Arizona Supreme Court. The district court also denied Rienhardt's requests to develop the evidentiary record because he did not demonstrate diligence in developing the record in state court.

Four years later, in 2009, the district court denied all the claims that it had allowed to proceed and granted a certificate of appealability (COA) as to the Attorney-as-Witness Claim and parts of the Mitigation Claim (B(1), (3), (7)). *Rienhardt v. Ryan*, 669 F. Supp. 2d. 1038, 1044, 1072 (D. Ariz. 2009).

In 2014, we entered a limited remand due to intervening law, directing the district court to reconsider the Attorney-

---

[5] As relevant here, the district court held that two subclaims concerning counsel's failure to present mitigation were procedurally defaulted.

Romance Claim and the parts of the Mitigation claim that had not been certified for review (B(2), (4)–(6), (8)). *See, e.g.*, *Martinez v. Ryan*, 566 U.S. 1 (2012); *Dickens v. Ryan*, 740 F.3d 1302 (9th Cir. 2014) (en banc). We also instructed the district court to consider whether intervening law warranted reconsideration of the Attorney-as-Witness Claim, the remaining parts of the Mitigation Claim, the Evidence Claim, and the denial of Rienhardt's requests to develop the evidentiary record.

On remand, the district court again rejected Rienhardt's claims and further development of the evidentiary record. *Rienhardt v. Shinn*, No. CV-03-0290-TUC-DCB, 2021 WL 5203110, at *36 (D. Ariz. Nov. 9, 2021). The district court granted a COA on the Attorney-Romance Claim and the entirety of the Mitigation Claim. *Id.* The parties do not dispute that the district court's 2009 COA regarding the reviewability of the Attorney-as-Witness Claim remains valid and, as such, is properly before us.

Rienhardt appeals the denial of his certified claims and urges us to expand the COA to cover the uncertified Evidence and Causal-Nexus Claims.

## FEDERAL HABEAS PRINCIPLES

We review the district court's denial of Rienhardt's habeas petition de novo. *Gulbrandson v. Ryan*, 738 F.3d 976, 986 (9th Cir. 2013). Because the petition was filed after April 24, 1996, our review is governed by AEDPA. *See Lambert v. Blodgett*, 393 F.3d 943, 965 (9th Cir. 2004).

## A.  Deference to State Adjudications

Under AEDPA, we may not grant habeas relief on any claim "adjudicated on the merits in State Court" unless the state court's decision was (1) "contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2). In determining whether a claim was "adjudicated on the merits in State Court," *id.*, we start with the presumption that all decisions—including summary denials—are rendered on the merits. *See Harrington v. Richter*, 562 U.S. 86, 98–100 (2011); *Johnson v. Williams*, 568 U.S. 289, 293 (2013). This presumption applies absent "any indication or state-law procedural principles to the contrary." *Harrington*, 562 U.S. at 99; *see Johnson*, 568 U.S. at 301–03.

We apply § 2254(d)'s deferential review standards to the last reasoned state-court decision adjudicating the claim at issue. *See Wilson v. Sellers*, 584 U.S. 122, 125–26 (2018); *Murray v. Schriro*, 745 F.3d 984, 996 (9th Cir. 2014). If the most recent decision is not reasoned but affirms a reasoned lower state court decision on the same issue, we "employ[] a 'look through' presumption" and defer to the reasoning of the lower state court. *Wilson*, 584 U.S. at 128.

To obtain relief under § 2254(d)(1)'s framework for reviewing legal analysis, which asks whether the state court's decision was "contrary to" or "an unreasonable application of" Supreme Court precedent, the petitioner must show "that 'there was no reasonable basis' for the [state] [c]ourt's decision." *Cullen v. Pinholster*, 563 U.S. 170, 188 (2011) (quoting *Harrington*, 562 U.S. at 98). If there is no reasoned state-court decision, we "engage in an independent review of the record and ascertain whether the state court's decision was objectively unreasonable." *Murray*, 745 F.3d at 996 (citation modified). In doing so, we must "determine what arguments or theories . . . could have supported[] the

state court's decision," and we may grant relief only "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with th[e] [Supreme] Court's precedents." *Harrington*, 562 U.S. at 102.

Under AEDPA's framework for reviewing factual findings, under which a petitioner must show the state court made "an unreasonable determination of the facts," 28 U.S.C. § 2254(d)(2), "[a] state court's factual findings are unreasonable if 'reasonable minds reviewing the record' could not agree with them." *Ayala v. Chappell*, 829 F.3d 1081, 1094 (9th Cir. 2016) (quoting *Brumfield v. Cain*, 576 U.S. 305, 314 (2015)). "[A] state-court['s] factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). If the state court did not make any findings, we may grant relief only where the state court was required to make a finding or where it unreasonably failed to hold an evidentiary hearing. *See Prescott v. Santoro*, 53 F.4th 470, 480–82 (9th Cir. 2022). Otherwise, a "summary denial constitute[s] a determination by the state court 'that the claims made in that petition [do] not state a prima facie case entitling [the petitioner] to relief,'" which is "a legal determination" reviewable under § 2254(d)(1). *Id.* at 479 (quoting *In re Clark*, 855 P.2d 729, 741–42 (Cal. 1993)); *see also* Ariz. R. Crim. P. 32.11 (2020) ("If, after identifying all precluded and untimely claims, the court determines that no remaining claim presents a material issue of fact or law that would entitle the defendant to relief under this rule the court must summarily dismiss the petition.") (originally enacted as Ariz. R. Crim. P. 32.6 (1992)).

De novo review of a claim adjudicated on the merits by a state court is available only if the decision "does not

withstand deferential scrutiny under § 2254(d).” *Amado v. Gonzalez*, 758 F.3d 1119, 1131 (9th Cir. 2014). Similarly, if a claim or part of a claim was not adjudicated on the merits but is otherwise properly before the court, we apply de novo review. *Id.*; *Kipp v. Davis*, 971 F.3d 939, 949 (9th Cir. 2020).

## B. Exhaustion and Procedural Default

A federal court's ability to grant habeas relief is constrained by § 2254(b)(1)'s requirement that petitioners first exhaust state remedies. *See Coleman v. Thompson*, 501 U.S. 722, 731 (1991). Petitioners must "fairly present[]" their claims to the state's highest court in a procedurally appropriate manner. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). A claim presented in federal court is not exhausted if it is based on a different factual ground than the one presented in state court. *See Pinholster*, 563 U.S. at 182 ("It would be contrary to [§ 2254(b)'s exhaustion requirement] to allow a petitioner to overcome an adverse state-court decision with new evidence introduced in a federal habeas court and reviewed by that court in the first instance effectively *de novo*."); *Tamalini v. Stewart*, 249 F.3d 895, 898 (9th Cir. 2001) ("Because [Petitioner] did not describe the operative facts and legal theory upon which a . . . claim is based, he did not fairly present those particular federal claims to the state courts." (citation modified)). "A claim has not been fairly presented in state court if new factual allegations either fundamentally alter the legal claim already considered by the state courts[] or place the case in a significantly different and stronger evidentiary posture than it was when the state courts considered it." *Dickens*, 740 F.3d at 1318, *abrogated on other grounds by Shinn v. Ramirez*, 596 U.S. 366 (2022) (internal quotation marks and citations omitted).

Relatedly, a federal court cannot hear a claim that is procedurally defaulted under "an independent and adequate state procedural rule." *See Coleman*, 501 U.S. at 750. Procedural default applies where the petitioner asserted the claim and the state court ruled that it was procedurally barred, *Martinez*, 566 U.S. at 7, or where the petitioner never raised the claim but "it is clear that the state court would hold the claim procedurally barred" at the time of the federal habeas petition, *Franklin v. Johnson*, 290 F.3d 1223, 1230–31 (9th Cir. 2002) (quoting *Harris v. Reed*, 489 U.S. 255, 263 & n.9 (1989)). We treat procedurally defaulted federal claims as "technically exhausted."[6] *Rodney v. Garrett*, 116 F.4th 947, 954 (9th Cir. 2024).

A petitioner may overcome procedural default by "demonstrat[ing] cause for the default and actual prejudice as a result of the alleged violation of federal law[] or demonstrat[ing] that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. But *Coleman* held that error by petitioner's counsel in postconviction proceedings does not constitute cause under this standard "because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must bear the risk of attorney error." *Id.* at 753 (internal quotation marks and citation omitted).

In 2012, the Supreme Court "recogniz[ed] a narrow exception" to *Coleman*'s holding: "Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim

---

[6] A claim raised to the state court in a procedurally improper manner is not exhausted because it was not "fairly presented." *See O'Sullivan*, 526 U.S. at 848.

of ineffective assistance at trial." *Martinez*, 566 U.S. at 9. After *Martinez*, we decided *Dickens* and held that if a petitioner can show that the IAC claim on which he seeks federal review was not fairly presented to the state court—that is, "new factual allegations either fundamentally alter the legal claim already considered by the state courts[] or place the case in a significantly different and stronger evidentiary posture"—then the claim may be analyzed under *Martinez*. *Dickens*, 740 F.3d at 1318 (internal quotation marks and citations omitted). We also held that a district court may consider new evidence presented in support of a claim that was not adjudicated on the merits by the state court because "new allegations and evidence fundamentally altered" the claim presented to the state court. *Id.* at 1320 (internal quotation marks and citation omitted).

Our prior remand in this case directed the district court to reconsider some of Rienhardt's claims due to this intervening caselaw. And on remand, the district court considered whether Rienhardt's new factual allegations "fundamentally alter[ed]" his claims under *Dickens* and whether he could establish cause for procedural default under *Martinez*. *See id.* at 1318; *Martinez*, 566 U.S. at 9. While this appeal was pending, however, the Supreme Court abrogated much of *Dickens* by circumscribing what evidence a federal court can consider in analyzing whether cause and prejudice exist under *Martinez*. *See Ramirez*, 596 U.S. at 389; *infra* Discussion § A.

## DISCUSSION

### A. Evidentiary Record

In support of his IAC-based claims, Rienhardt partially relies on evidence that has not been presented to the state courts during direct review or PCR proceedings. The district

court declined to consider the new evidence or to allow development of the state court evidentiary record. As a preliminary matter, we consider whether this was error.

When reviewing claims presented under § 2254(d), federal courts are "limited to the record that was before the state court that adjudicated the claim on the merits." *Pinholster*, 563 U.S. at 181; *Gulbrandson*, 738 F.3d at 993 n.6. Moreover, where a petitioner fails to develop the factual basis of a claim in state court and the claim is not adjudicated on the merits, federal courts are precluded from expanding the record or holding an evidentiary hearing unless the stringent requirements of § 2254(e)(2) are met. *See Ramirez*, 596 U.S. at 384, 389. Section 2254(e)(2) provides:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that–
>
> > (A) the claim relies on–
> >
> > > (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> > >
> > > (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
> >
> > (B) the facts underlying the claim would be sufficient to establish by clear and

> convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

A petitioner fails to develop the record when there is a "lack of diligence, or some greater fault, attributable to [him] or [his] counsel." *Williams v. Taylor* (*Michael Williams*), 529 U.S. 420, 432 (2000). The petitioner must prove his diligence. *Id.* at 440. Rienhardt argues that he did not fail to develop the record and, alternatively, that any failure may be excused. We address each contention.

**1.**

Rienhardt argues that he did not fail to develop the record regarding his trial counsel's deficiencies because he was diligent in presenting the evidence on which he seeks to rely. Rienhardt asserts that his first PCR petition raised issues of material fact that required a hearing and that he provided the relevant evidence in support of his two subsequent PCR petitions. These arguments fail.

Even if requesting an evidentiary hearing were sufficient to prove diligence, *see Stanley v. Schiro*, 598 F.3d 612, 624 (9th Cir. 2010), it is undisputed that Rienhardt did not make this request in his first PCR proceeding. And to the extent he suggests that the state court was obligated to sua sponte hold an evidentiary hearing on his first PCR petition because he demonstrated that there were "issues of material fact" to be resolved, that argument also fails. *See Hibbler v. Benedetti*, 693 F.3d 1140, 1147 (9th Cir. 2012) ("[W]e have never held that a state court must conduct an evidentiary hearing to resolve every disputed factual question."). Rienhardt does not explain how presenting "issues of material fact" in his

first petition shows that he "made a reasonable attempt, in light of the information available at the time, to investigate and pursue" the evidence in state court. *Michael Williams*, 529 U.S. at 435.

The record also belies Rienhardt's assertion that he attempted to develop evidence in his second PCR proceeding. In denying the IAC claims in this petition as precluded for not being raised in Rienhardt's first petition, the Arizona Superior Court explained that the claims were "based on the original trial records" and "raise[d] no new facts." The "failure to present evidence to the state courts in compliance with state procedural rules counts as a failure to develop the factual basis of a claim in State court." *See McLaughlin v. Oliver*, 95 F.4th 1239, 1249 (9th Cir. 2024) (citation modified).

Finally, even if we credited Rienhardt's assertion that he presented his new evidence to the state court in support of his third PCR petition, that would not suffice to "develop the factual basis of [his IAC] claim[s] in State court proceedings" because he did not raise IAC in his third petition.[7] 28 U.S.C. § 2254(e)(2). As with § 2254(b)(1)'s exhaustion requirement, *see Tamalini*, 249 F.3d at 898, a petitioner fails to develop the factual basis of his claims within the meaning of § 2254(e)(2) when he does not

---

[7] It is also unclear that Rienhardt's evidence was presented in a procedurally appropriate manner. In denying his claims based on "newly discovered" testimonial evidence—many of the same declarations Rienhardt attempts to rely on in this proceeding—the state trial court held that Rienhardt "fail[ed] to show he diligently presented" his evidence. The court relied on the new testimonial evidence only when evaluating Rienhardt's claims of actual innocence under Arizona Rule of Criminal Procedure 32.1(h), which does not require a finding of diligence.

develop those facts *in connection with* the claim at issue in the federal habeas proceeding, *see Keeney v. Tamayo-Reyes*, 504 U.S. 1, 7–8 (1992) ("[I]t is . . . irrational to distinguish between failing to properly assert a federal claim in state court and failing in state court to properly develop such a claim."), *superseded by statute on other grounds*, 28 U.S.C. § 2254(e)(2), *as recognized in Ramirez*, 691 U.S. at 382.

In *Keeney*, the Supreme Court laid out the pre-AEDPA standard for factual development in habeas proceedings. *See Ramirez*, 596 U.S. at 381. *Keeney*'s reasoning, however, remains relevant to interpreting § 2254(e)(2), especially where that provision adopted language that "echoes" *Keeney*. *Michael Williams*, 529 U.S. at 433–34; *see also Ramirez*, 596 U.S. at 381–83. *Keeney* explained that requiring a heightened showing before introducing facts not developed in state court "is fully consistent with, and gives meaning to, the requirement of exhaustion," and "little can be said for holding a habeas petitioner to one standard for failing to bring a claim in state court and excusing the petitioner under another, lower standard for failing to develop the factual basis of that claim in the same forum." 504 U.S. at 9–10; *see Ramirez*, 596 U.S. at 381 (same). Because Rienhardt has not properly presented any of his new evidence before a state court adjudicating a federal IAC claim, it has not been properly developed.[8]

---

[8] Rienhardt's arguments about *State v. Anderson*, 547 P.3d 345 (Ariz. 2024), are likewise foreclosed because they rely on his mistaken assertion that he raised IAC claims in his third PCR petition and that presentation of the new evidence in connection with any claim is sufficient to constitute development of the record for the purposes of § 2254(e)(2).

For these reasons, we hold that Rienhardt "failed to develop the factual basis" of his IAC claims in his state PCR proceedings. 28 U.S.C. § 2254(e)(2).

## 2.

Rienhardt also argues that any failure by his state PCR counsel in developing the evidentiary record cannot be imputed to him because Arizona confers a due-process right to "qualified, competent" PCR counsel that it violated. Arizona law does require that counsel be provided for capital PCR proceedings and sets the standards that counsel must meet. *See* Ariz. Rev. Stat. § 13-4041(B)–(C); Ariz. R. Crim. P. 6.8(d). But Arizona's choice does not create a *federal* due-process right to constitutionally effective counsel in state PCR proceedings. *See Pennsylvania v. Finley*, 481 U.S. 551, 559 (1987) ("States have substantial discretion to develop and implement programs to aid prisoners seeking to secure postconviction review," which do not "requir[e] the full panoply of procedural protections that the Constitution requires be given to defendants who are in a fundamentally different position"); *Ramirez*, 596 U.S. at 383 ("[T]here is no constitutional right to counsel in state postconviction proceedings." (citing *Davila v. Davis*, 582 U.S. 521, 528–29 (2017))). Accordingly, because he has no federal right to PCR counsel that was infringed, Rienhardt "bea[rs] responsibility for all attorney errors during those proceedings," including "counsel's negligent failure to develop the state postconviction record." *Ramirez*, 596 U.S. at 383 (internal quotation marks and citation omitted).

Rienhardt argues that if his state PCR counsel was not diligent, then we should consider his new evidence under *Martinez* and *Dickens* because his counsel was ineffective. Essentially, it seems he is asking us to look to his new

evidence to determine that his IAC claims were fundamentally altered under *Dickens* (making them technically exhausted) and to show cause for his procedural default under *Martinez*. *Ramirez* squarely forecloses Rienhardt's argument.

*Ramirez* held that "a federal court may not hold an evidentiary hearing—or otherwise consider new evidence—to assess cause and prejudice under *Martinez*." *Id.* at 389. The Supreme Court explained that, in passing § 2254(e)(2), "Congress foreclosed" the possibility that "ineffective assistance of postconviction counsel can excuse a [petitioner's] failure to develop the state-court record." *Id.* at 384. And *Ramirez* abrogated our holding in *Dickens* "that [a petitioner's] new evidence could be considered as so fundamentally alter[ing] his ineffective assistance claim that the augmented version of the claim should be considered a new claim that fits within the *Martinez* exception for procedural default." *McLaughlin*, 95 F.4th at 1250 (citation modified).

Accordingly, for us to consider Rienhardt's new evidence, he must satisfy § 2254(e)(2). *See Ramirez*, 596 U.S. at 389. Rienhardt does not argue that he has met these "stringent requirements." *Id.* (quoting *Michael Williams*, 529 U.S. at 433). And it is clear that he has not. For these reasons, the district court correctly declined to consider Rienhardt's new evidence.

## B. Certified Claims

Rienhardt's certified claims all relate to allegations that his trial counsel was ineffective. To prevail on these claims, Rienhardt must show that (1) "counsel's performance was deficient," and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687

(1984). Counsel's performance was deficient if it "fell below an objective standard of reasonableness . . . under prevailing professional norms." *Id.* at 688. Federal courts apply a strong presumption that counsel performed within the wide range of reasonable professional assistance. *Id.* at 689. Prejudice exists where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," meaning the "probability [is] sufficient to undermine confidence in the outcome." *Id.* at 694.

Under AEDPA, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Harrington*, 562 U.S. at 101; *see* 28 U.S.C. § 2254(d)(1). "The standards created by *Strickland* and AEDPA are both highly deferential, and when the two apply in tandem, review is doubly so." *Rowland v. Chappell*, 876 F.3d 1174, 1183 (9th Cir. 2017) (internal quotation marks omitted) (quoting *Harrington*, 562 U.S. at 105).

### 1. Attorney-as-Witness Claim

Rienhardt claims that Larsen had a conflict of interest that caused him to provide ineffective assistance in his handling of George's adverse testimony. Rienhardt asserts that before or during George's testimony Larsen should have requested to have nonconflicted counsel appointed or moved for a mistrial. This claim was properly exhausted in the Arizona courts. *See* 28 U.S.C. § 2254(b)(1)(A).

In the context of concurrent conflicting representations, the Supreme Court has held that an actual conflict of interest violates the Sixth Amendment right to counsel where it "adversely affected [the] lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980). And "[a] defendant who shows that a conflict of interest actually affected the

adequacy of his representation need not demonstrate prejudice in order to obtain relief." *Id.* at 349–50.

Rienhardt's reliance on *Sullivan* is misplaced because the Supreme Court has not extended its holding to any context beyond concurrent conflicting representations. *See Mickens v. Taylor*, 535 U.S. 162, 175 (2002). In *Mickens*, the Court "specifically and explicitly concluded that *Sullivan* was limited to joint representation, and that any extension of *Sullivan* outside of the joint representation context remained, 'as far as the jurisprudence of [the Supreme Court was] concerned, an open question.'" *Earp v. Ornoski*, 431 F.3d 1158, 1184 (9th Cir. 2005) (alteration in original) (quoting *Mickens*, 535 U.S. at 176).

Rienhardt does not contend that Larsen's conflict stemmed from joint representation. His argument is that Larsen had a personal conflict because the prosecution indicated that it might call him to testify about his unrecorded conversation with George. Because "only Supreme Court holdings are binding on state courts," we cannot say that the state's rejection of this claim was contrary to or an unreasonable application of *Sullivan*. *Earp*, 431 F.3d at 1184 n.23, 1185; *see also Lambert*, 393 F.3d at 974.

Rienhardt also argues that Arizona's rejection of the Attorney-as-Witness Claim was contrary to *United States v. Cronic*, 466 U.S. 648 (1984). *Cronic* established that prejudice from ineffective assistance of counsel is presumed when there is a "complete denial of counsel" because counsel was "absent[] or prevented from assisting the accused during a critical stage" or when "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." *Id.* at 659 & n.25. Rienhardt asserts that

Larsen's conflict undermined Rienhardt's right to counsel at a critical stage of the trial and, relatedly, that Larsen failed to act as a true adversary against the prosecution. *See id.* at 659. Again, we disagree.

Larsen was not absent or prevented from assisting Rienhardt during George's testimony. Nor did he fail to pursue Rienhardt's interests or to challenge the prosecution's case during the presentation of this evidence. *See id.* Larsen impeached George on multiple points to undermine her credibility. His decision to not re-cross George about their unrecorded conversation was not an unconstitutional deprivation of effective counsel under *Cronic*. *See id.*; *Bell v. Cone*, 535 U.S. 685, 697 (2002) (specifying that *Strickland*, not *Cronic*, applies to claims that counsel failed to oppose the prosecution "at specific points" rather than "throughout the . . . proceeding as a whole"). Accordingly, we conclude that the state court's rejection of the Attorney-as-Witness Claim did not violate *Cronic*.

Additionally, even if Larsen had provided deficient representation in his handling of George's testimony, Rienhardt cannot establish that he suffered prejudice as a result. *See Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed."). As the district court noted, had Larsen moved for a mistrial, there is no indication that it would have been granted. *Rienhardt*, 669 F. Supp. 2d at 1050; *Rienhardt*, 2021 WL 5203110, at *30. Rienhardt surely has not shown a substantial likelihood of that outcome. *See Harrington*, 562 U.S. at 112 ("The likelihood of a different result must be substantial, not just conceivable." (citation omitted)); *Strickland*, 466 U.S. at 693–94. And there is nothing in the record indicating what Larsen's testimony would have been

had he testified. *Cf. United States v. Berry*, 814 F.2d 1406, 1409 (9th Cir. 1987) (prejudice not shown where petitioner offered no indication of what witnesses would have testified to or how testimony would have changed outcome).

Before these federal habeas proceedings, Rienhardt never argued that George's testimony was false. *See Rienhardt*, 669 F. Supp. 2d. at 1050 ("[Rienhardt] has never contended that George's version of the interview was inaccurate. Therefore, as the district court found, "[n]o matter what course Larsen took, George's testimony about the interview would have been presented." *Id.* Under these circumstances, the state courts did not err in concluding that there was no reasonable probability of a different result. *See Strickland*, 466 U.S. at 694.

As noted by the Arizona Supreme Court in Rienhardt's direct appeal, Larsen's cross-examination of George was "withering" and "created a strong inference that George had fabricated her story in exchange for leniency." *Rienhardt*, 951 P.2d at 461. Larsen's questioning revealed that she had changed her story about Rienhardt's involvement several times, otherwise provided inconsistent information, received a favorable plea bargain in exchange for testifying against Rienhardt, and was a drug user.

Other evidence presented to the jury further undermines any possibility that Larsen's handling of George's testimony prejudiced the outcome of trial. The evidence against Rienhardt was overwhelming. *Cf. Strickland*, 466 U.S. at 699–700 (assessing the strength of the state's case when determining prejudice). As summarized by the district court,

> [Rienhardt] was apprehended "almost literally 'red-handed,'" . . . soon after the

killing while fleeing from the police and leaving behind a car full of incriminating evidence which he and his accomplices had tried to burn. Blood consistent with the victim's was splattered on his clothes. Witnesses heard him threatening to kill the victim in the same manner in which the victim was in fact killed. After his arrest he wrote letters boasting about the murder and asking George to change her story in his favor.

*Rienhardt*, 669 F. Supp. 2d. at 1050 (quoting *Rienhardt*, 951 P.2d at 461).

Finally, Rienhardt argues that the state court's denial of his Attorney-as-Witness Claim was based on an unreasonable determination of the facts because: (1) it could "only be based on [the state court's] refusal to recognize that Larsen became an extremely damaging witness against his own client," (2) the state court failed to hold an evidentiary hearing, and (3) the state court ignored evidence in declarations submitted after the first PCR petition was decided. Because the state courts summarily denied this claim without any factual findings, Rienhardt can obtain relief under § 2254(b)(2) only by showing that the court failed to make a required factual finding or to hold a required evidentiary hearing. *See Prescott*, 53 F.4th at 480. But Rienhardt "has not shown that the state court had an obligation to make any specific factual findings." *Id.* Nor in his first PCR proceeding did he request an evidentiary hearing or present the declarations on which he now seeks to rely. Thus, we have no basis to disrupt the state court's factual analysis. 28 U.S.C. § 2254(d)(2).

## 2. Attorney-Romance Claim

Rienhardt next argues that Larsen had a conflict of interest because he was romantically interested in potential witness Anjanette Ortiz and prioritized his romantic interests over Rienhardt's interests by not calling Ortiz as a witness because she was afraid to testify. Ortiz is Rienhardt's ex-girlfriend and the mother of his child. Ortiz also owned the Buick that Rienhardt and Nadeau used to transport Ellis and that Rienhardt, Nadeau, and George tried to burn after the murder. *See Rienhardt*, 951 P.2d at 464.

Rienhardt did not raise this asserted romantic conflict in any of his state PCR petitions, and he concedes that it is procedurally defaulted. Thus, we deem this claim technically exhausted. *See Harris*, 489 U.S. at 263 n.9. Rienhardt argues he has cause to overcome his procedural default under *Martinez* because his PCR counsel was ineffective in not raising this issue. Rienhardt's attempt to revive this defaulted claim fails because it depends on evidence that was not presented until after his first PCR petition was resolved and, as explained, new evidence cannot be considered in "assess[ing] cause and prejudice under *Martinez*." *Ramirez*, 596 U.S. at 389.

Limited to the evidence presented in his first PCR proceeding, Rienhardt cannot establish cause justifying his procedural default because there is nothing to support his assertion that his PCR counsel was ineffective in not presenting this challenge. *See Martinez*, 566 U.S. at 15–16 ("When faced with the question whether there is cause for an apparent default, a State may answer that the ineffective-assistance-of-trial-counsel claim is insubstantial, *i.e.,* it does not have any merit or that it is wholly without factual support, or that the attorney in the initial-review collateral

proceeding did not perform below constitutional standards."). Thus, the district court properly held that this claim is procedurally defaulted and that the default is not excused. *See id.*; *Coleman*, 501 U.S. at 750.

### 3.  Mitigation Claim

Rienhardt's claim that Larsen provided ineffective assistance at sentencing encompasses multiple subclaims, some of which are exhausted and some of which are procedurally defaulted.

### a.   Exhausted Subclaims

Rienhardt asserts three exhausted theories—that Larsen failed to (1) investigate any mitigation (Claim B(1)), (2) adequately advise Rienhardt about mitigation (Claim B(3)), and (3) present a mitigation case at sentencing (Claim B(7)). These theories fail on their merits because, even assuming Larsen provided ineffective representation, Rienhardt cannot show prejudice. Rienhardt explicitly instructed Larsen not to present a mitigation case at sentencing, and he confirmed his decision when the trial judge independently counseled him on the significance of mitigation evidence in capital sentencings. The Supreme Court has held that it is "not objectively unreasonable . . . to conclude that a defendant who refused to allow the presentation of any mitigating evidence could not establish *Strickland* prejudice based on his counsel's failure to investigate further possible mitigating evidence." *Schriro v. Landrigan*, 550 U.S. 465, 478 (2007).[9]

---

[9] Although *Landrigan* was decided after the Arizona Supreme Court denied review of Rienhardt's first PCR petition (and therefore is not the relevant "clearly established Federal law" under AEDPA), the parties both recognize that *Landrigan* may inform our analysis. *See Shoop v.*

*Landrigan* indicates that the Arizona courts did not unreasonably apply *Strickland* in determining that Rienhardt's waiver of mitigation negated any finding that he was prejudiced by his counsel's failure to act contrary to his direction, especially given the deference mandated by AEDPA. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by" the Supreme Court. *Harrington*, 562 U.S. at 101 (alteration in original) (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)). This is especially true given that *Strickland* is "a general standard, [so] a state court has even more latitude to reasonably determine that a defendant has not satisfied [it]." *Knowles*, 556 U.S. at 123.

### b. Procedurally Defaulted Subclaims

Rienhardt raises two procedurally defaulted subclaims—that Larsen failed to (1) file a sentencing memorandum (Claim B(5)), and (2) seek an expert to perform "neuropsychological and educational testing" (Claim B(2)).

Rienhardt contends that a sentencing memorandum could have challenged the erroneous pecuniary-gain sentencing factor found by the trial court and could have explained Rienhardt's mitigating roles in both the offenses

---

*Hill*, 586 U.S. 45, 52 (2019) (per curiam) (holding that a federal habeas court must "determine whether [the state court's] conclusions can be sustained based strictly on legal rules that were clearly established in the decisions of [the Supreme Court] at the relevant time"). Indeed, we do not ask whether the Arizona courts' decision was "an unreasonable application of" or "contrary to" *Landrigan*. The proper inquiry is about *Strickland*. But *Landrigan*—a post-AEDPA case reviewing an application of *Strickland*—provides guidance in addressing these nearly identical circumstances.

in this case and his past violent offense. The first point related to the pecuniary-gain sentencing factor is "insubstantial" and lacks merit. *Martinez*, 566 U.S. at 15. On direct review, the Arizona Supreme Court reversed the pecuniary-gain factor, independently reweighed the sentencing factors, and concluded that a death sentence was appropriate. *See Rienhardt*, 951 P.2d at 466–68.

Rienhardt's arguments that a sentencing memorandum could have shown his role in the offenses undermined the aggravating factors found at sentencing rely on evidence that he failed to present in compliance with state procedural rules. *See Ramirez*, 596 U.S. at 389. As such, they are without merit because, limited to the state court record, they have no supporting evidence.

Finally, Rienhardt's convoluted argument that his first PCR attorney should have sought an expert opinion on mental-health and neuropsychological issues fails. Rienhardt's point appears to be that he can show cause under *Martinez* because this attorney performed deficiently by not seeking this evidence, which would have revealed Larsen's deficiency in failing to develop a mitigation case for sentencing. Again, even setting aside Rienhardt's waiver of mitigation, he cannot show cause under *Martinez* because he relies on evidence developed after his initial state PCR proceedings, namely a 2015 neuropsychological evaluation. *See Ramirez*, 596 U.S. at 389.

### C. Uncertified Claims

Finally, Rienhardt asks us to certify for review two additional claims: the Evidence Claim (whether admission of Larsen's interview of George violated his rights to counsel, confrontation of witnesses, and due process), and the Causal-Nexus Claim (whether the Arizona Supreme

Court wrongly required a causal nexus between the crime and the mitigation factors). We decline to do so.

Under AEDPA, we may not review a district court's ruling on a state prisoner's habeas petition "unless a circuit justice or judge issues a certificate of appealability" based on a "substantial showing of the denial of a constitutional right" by the petitioner. 28 U.S.C. § 2253(c)(1)–(2). This "is a 'threshold inquiry' to entertaining an appeal, and we cannot consider the merits of a claim until a COA has been issued on that claim." *Clark v. Chappell*, 936 F.3d 944, 983 (9th Cir. 2019) (quoting *Slack v. McDaniel*, 529 U.S. 473, 482 (2000)).

A petitioner seeking a COA "must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further." *Lambright v. Stewart*, 220 F.3d 1022, 1025 (9th Cir. 2000) (brackets in original) (emphasis omitted) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). "[W]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003) (quoting *Slack*, 529 U.S. at 484). "The COA inquiry . . . is not coextensive with a merits analysis," otherwise, we would be, "in essence[,] deciding an appeal without jurisdiction." *Buck*, 580 U.S. at 115 (citation omitted).

### 1. Evidence Claim

Rienhardt's challenge to the admission of evidence about Larsen's initial, unrecorded conversation with George

overlaps with his Attorney-as-Witness Claim, and our rejection of that claim removes reasonable debate concerning Rienhardt's Sixth Amendment arguments. Rienhardt was not denied counsel or the chance to confront George where Larsen effectively impeached her. *See, e.g.*, *Earp*, 431 F.3d at 1184 ("[A]ny extension of *Sullivan* outside of the joint representation context remain[s], 'as far as the jurisprudence of [the Supreme Court is] concerned, an open question.' (quoting *Mickens*, 535 U.S. at 176)); *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per curiam) ("[T]he Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent the defense might wish."). And Larsen did not actually testify at trial, so we need not address that issue.

Rienhardt cites *Woodson v. North Carolina*, 428 U.S. 280 (1976), for his due-process argument, but he does not explain the relevance of this authority. Nor has he shown "that the state court applied [clearly established law] to the facts of his case in an objectively unreasonable manner." *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam); *Miller-El*, 537 U.S. at 338. Rienhardt argues that the state court made an unreasonable factual finding in addressing his due-process claim on direct appeal when it stated: "it seems clear that [Larsen's] decision not to cross-examine George and force a mistrial was a strategic one." *Rienhardt*, 951 P.2d at 462. We deny a COA because we conclude "that reasonable jurists would [not] find the district court's assessment of the constitutional claims debatable or wrong." *Miller-El*, 537 U.S. at 338 (citation omitted); *see also Harrington*, 562 U.S. at 109 (explaining the "'strong presumption' that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than 'sheer

neglect.'" (quoting *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003) (per curiam))).

## 2. Causal-Nexus Claim

The parties disagree whether the Causal-Nexus claim was properly exhausted. We do not dwell on this point but rather exercise our discretion to evaluate the merits of Rienhardt's request for a COA for this claim. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); *Henry v. Ryan*, 720 F.3d 1073, 1079–80 (9th Cir. 2013).

A "sentencer, and the [appellate court] on review, may determine the weight to be given relevant mitigating evidence. But they may not give it no weight by excluding such evidence from their consideration." *Eddings v. Oklahoma*, 455 U.S. 104, 114–15 (1982); *see also Lockett v. Ohio*, 438 U.S. 586, 604 (1978) ("[A] sentencer . . . [may] not be precluded from considering, *as a mitigating factor*, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death."). To the extent that Rienhardt disputes the weight afforded to the mitigating factors considered at his sentencing, that matter was within the state court's discretion. *Poyson v. Ryan*, 879 F.3d 875, 888 (9th Cir. 2018) *see also Harris v. Alabama*, 513 U.S. 504, 512 (1995) ("[T]he Constitution does not require a State to ascribe any specific weight to particular factors, either in aggravation or mitigation, to be considered by the sentencer."). And the record demonstrates that the improper causal nexus was applied only to Rienhardt's substance use. *See Rienhardt*, 951 P.2d at 467–68. This error is subject to

harmless-error review, *see McKinney v. Ryan*, 813 F.3d 798, 821–22 (9th Cir. 2015) (en banc), and Rienhardt has "failed 'to demonstrate that reasonable jurists would find the district court's assessment . . . debatable or wrong.'" *Lambright*, 220 F.3d at 1030 (quoting *Slack*, 529 U.S. at 484).

**AFFIRMED.**